Atkinson, J.,
delivered the opinion of the court:
This suit involves the pay of plaintiff as captain of a company of United States Army Volunteers in the war with Spain, which pay was deducted by reason of the sentence of a general court-martial promulgated March 27, 1900. Also for commutation for quarters alleged to be due for the period plaintiff was detained under arrest pending said trial and conviction in the Philippine Islands. It is claimed that pay and commutation for quarters thus withheld should be allowed because of the illegality of the court-martial that found him guilty of the charges preferred against him.
Two questions are involved in the determination of the case: First, was the court-martial legally held under the laws of Congress and the regulations of the War Department? Second, was plaintiff, during the pendency of such trial and conviction, acting under orders of the War Department?
Section 1342 of the Revised Statutes regulates, among other things, the formation and control of courts-martial for the trial of officers and enlisted men for violation of army regulations. Article 75 of said section is in the following language: “ General courts-martial may consist of any number of officers from five to thirteen; but they shall not consist of less than thirteen when that number can be convened without manifest injury to the service.”
Article 77 provides that ■ “ Officers of the Regular Army shall not be competent to sit on courts-martial to try the officers or soldiers of other forces, except as provided in Article 78.” Said article (78) provides that officers of the Marine Corps, detached for service with the army, may be associated with officers of the Regular Army on courts-martial for the trial of offenders belonging to the Regular Army, or to forces of the Marine Corps so detached.
*228 Article 79 provides that “ Officers shall be tried only by general courts-martial; and no officer shall, when it can be avoided, be tried by officers inferior to him in rank.”
Neither Article 78 nor 79, however, has any bearing upon the case before us.
During the war with Spain and the incident insurrection in the Philippine Islands there were in the United States Volunteer Army two classes of commissioned officers, to wit: (1) Those who held commissions in the Kegular Army and were granted commissions in the Volunteer Army in accordance with the provisions of the act of Congress approved May 28, 1898 (80 Stat. L., 421), and (2) those who volunteered from civil life. It is claimed that the court-martial before which plaintiff was tried was composed in part of officers of the Regular Army who had been assigned to temporary military duty in the volunteer service, and that they still retained their respective ranks in the regular establishment. Consequently, it is maintained by plaintiff that such officers were ineligible to sit as members of a military court-martial which involved the privileges and rights of an officer in the volunteer service under article 77 of section 1342 of the Revised Statutes.
Said article specifies in plain terms that “Officers of the Regular Army shall not he competent to sit on courts-martial to try the officers or soldiers of other forces.” The question necessarily arises, Is an officer of the Regular Army, who is on duty in the Volunteer Army, still an officer in the regular establishment ? If so, it is evident that he would be ineligible to sit as a member of a court-martial in the trial of an officer of the volunteer service for a military offense. This view is strengthened by the fact that the act of Congress of May 28, 1898, supra, provides that regular army officers transferred to the volunteer service shall not lose their places in the regular establishment by reason of such transfers, but that they shall be entitled to the pay and allowances of such volunteer ranks while holding the same. It is clear that the Congress in adopting article 77, supra, meant by the term “ officers and soldiers of other forces ” such officers only as were appointed from civil life — not military men profes *229 sionally, but those whose 'services were limited to the exigencies which impelled them to enter the military service.
It appears from the findings that the court-martial was composed of thirteen members, six of whom were members of the Regular Army holding commissions in the volunteer service under the act of May 28,1898, supra. In view of this fact, it must be held that the court-martial was without legal existence, and its sentence was therefore void and of no effect. (McClaughry v. Deming, 186 U. S., 49.) Therefore the sum of $480.25 which was withheld from plaintiff’s pay must be allowed. (Brown v. United States, 206 U. S. R., 240, and McClaughry v. Deming, supra.)
The second point raised in this case is, Was plaintiff entitled to commutation for quarters while he was awaiting the termination of said trial ?
The findings show that on or about January 1, 1900, pursuant to an order issued by the commanding officer of his regiment, plaintiff reported for trial before a court-martial at Manila, P. I., and was there detained awaiting orders subsequent to said trial until on or about March 13,1900; that in the meantime he applied for commutation for quarters; that his application was refused, and he was, therefore, required to furnish his own quarters and to pay for same while he was undergoing trial and awaiting its result. Section 1336 of Army Regulations, 1895, provides that “An army officer on duty without troops at a station where there are no public quarters, or where the public quarters are inadequate, is entitled to commutation therefor at established rates; ” and section 1006 of said regulations allows a captain two rooms for quarters and one room as a kitchen. The rate of commp.tation for officers’ quarters is fixed by the act of June 23, 1879 (21 Stat. L., 31), which provides “ that the rate of commutation shall hereafter be $12 per room per month for officers’ quarters.” Consequently an officer with the rank of captain is entitled to commutation for quarters at the rate of $36 per month, if he is without troops and is in the line of duty.
It is argued by defendant that an officer on trial before a court-martial is not entitled to commutation for quarters. Such contention might be well taken if it can be shown that *230 the officer under trial was not awaiting orders. It is conceded that plaintiff was ordered before the court-martial for trial; that his status was that of an officer under suspension from duty during the existence of such trial; but it is a disputed question as to whether he is entitled to commutation for quarters while under such suspension and trial. Defendants rely upon the cases of Swaim v. The United States (165 U. S., 553) and Phisterer v. The United States (94 U. S., 219).
We do not agree that the cases of Swaim and Phisterer, supra, apply to the case at bar. It is true that in Swaim’s case, where suspension from duty had been ordered, the question of the legality of the court-martial was raised. The Supreme Court decided that when an army officer was suspended from rank by the sentence of a court-martial, he was not entitled to emoluments or allowances; and the court further held that the court-martial in that case was regular, and its findings should not, therefore, be disturbed. That is not this case. Phisterer, who was an army officer, was ordered by proper authority from a military post where he was rendering service to proceed to his home and await orders. For the period he was on waiting orders at his own home he subsequently brought suit to recover commutation for quarters. The Supreme Court decided that he was not entitled to such allowance. Plaintiff was under charges during the pendency of his trial, and the result of the trial alone could determine his status as a volunteer army officer. He could not absent himself from the place of trial without disobeying the orders of his superiors. He was not absent from his post of duty without leave. On the contrary, he was present at the court-martial, in obedience to orders, awaiting the result of the trial, and such orders as would necessarily follow. It is evident, therefore, that, being required to remain at Manila during the pendency of his trial and its resulting orders, he was compelled to remain there until he was relieved by competent authority. Thus it is apparent that the case at bar differs from the case of Swaim, in that Swaim was suspended from duty by a court-martial, while no such order was issued in plaintiff’s case; *231 and it differs from Phisterer’s case, because plaintiff was not at home during the period for which he claims allowance for commutation for quarters.
Aside from this, it has been held by this court in a number of cases that the mere fact that an officer or soldier is under charges does not deprive him of his pay and allowances, and that such forfeiture can only be imposed by the sentence of a lawful court-martial (Smith v. United States, 2 C. Cls., 206; Winters v. United States, 3 ibid., 136; Collins v. United States, 15 ibid., 22; Sullivan v. United States, 32 ibid., 402, and Dodge v. United States, 33 ibid., 35). And we may add that the decisions of the Comptroller of the Treasury have been along the same line. (4 Compt. Dec., 605; 6 ibid., 970.)
In Overman's case (decided by First Comptroller, July 19, 1892), it was held that while he was attending a court-martial, in arrest, he was not there at his own request, or for his own convenience, but by order of his superior officer, which order he was compelled to obey; and there being no public quarters where the court-martial was held to which he could be assigned, he was entitled to commutation for quarters during the period l^e was in arrest.
Section 55 of Army Paymaster’s Manual is in the language following: “An officer ‘ in arrest ’ and on the military duty of attending a court-martial trial (his own), and obeying the orders of the court, is entitled to commutation of quarters ; the trial being held at a place where there are no public quarters.”
In Sullivan’s case, supra, it was held by this court that, “ when an officer is suspended and ordered in arrest it is as much his duty to obey as it is to perform or execute any other order requiring affirmative action. He ceases by order of his superior officer to perform the active duties incident to his office. He is not to do anything in the discharge of his official obligations in the form of military duty until relieved of the disability incident to his arrest. He is ‘ waiting orders’ emphatically. The official duties pertaining to'his position have been transferred to some other officer, and so far as the right to perform the duties of his office goes he is functus officio.'"
*232 As stated above, the uniform decisions of this court have been that it requires the decision of a court-martial to deprive an officer of his pay and allowances. The Army Regulations embrace, under the word “ allowances,” commutation for quarters, commutation for fuel, rations, forage, mileage, etc.
Our conclusion is that plaintiff is entitled to recover $36 per month as commutation for quarters from January 29, the time he applied for quarters, to March 13, 1900, while he was at Manila awaiting the result of his trial and sentence, a period of one month and fourteen days, or $52.80, as provided by the regulations of the War Department.
Judgment will accordingly be entered for plaintiff, on the whole case, against defendants for the sum of $533.05.