Augustin S. JAMES, Plaintiff–Appellant,

v.

Louis CALDERA, Secretary of the Army

and

Philip J. Schrock, Defendants–Appellees.

No. 97–1436.

United States Court of Appeals,
Federal Circuit.

Oct. 27, 1998.

Louis N. Hiken, San Francisco, California, argued for plaintiff-appellant. Of counsel on the brief was M. Allen Hopper, San Francisco, California.

Mark W. Pennak, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice, Washington, DC, argued for defendants-appellees. With him on the brief were Frank W. Hunger, Assistant Attorney General, U.S. Department of Justice, Washington, DC; Michael Joseph Yamaguchi, United States Attorney for the Northern District of California, San Francisco, California and Barbara C. Biddle, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice, Washington, DC.

Before MAYER, Chief Judge, MICHEL, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Dissenting opinion filed by Circuit Judge MICHEL.

SCHALL, Circuit Judge.

Augustin S. James appeals the order of the United States District Court for the Northern District of California that transferred his case to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1631 (1994). *See James v. West,* No. C–96–1779–VRW, 1997 WL 26303 (N.D.Cal. Jan. 15, 1997). We have jurisdiction pursuant to 28 U.S.C. § 1292(d)(4)(A) (1994).

James, a former non-commissioned officer in the United States Army, filed suit in the district court seeking mandamus relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706 (1994). He alleged that, in discharging him, the Army had wrongfully denied him a five-month extension of his enlistment. Consequently, he sought from the district court an order directing the Army to correct his records to reflect the twenty years active duty service and eligibility for retirement that would have been his had he been allowed to stay in the service for an additional five months. He also asked the court to direct the Army to remove from his records a bar to reenlistment that had been imposed upon him, and he alleged that the Army had improperly denied him the right to appeal the bar.

The district court granted the government's motion to transfer the case to the Court of Federal Claims because it concluded that it lacked jurisdiction. Noting that the APA waives sovereign immunity only with respect to claims other than for money damages and that it excludes a waiver of sovereign immunity when adequate relief is available in another court, the court held that transfer was necessary because James asserted claims for money damages which could be heard in the Court of Federal Claims. We hold, however, that the claims asserted by James with respect to the bar to reenlistment are not for money damages and that the Court of Federal Claims lacks jurisdiction to adjudicate them. As far as the extension of enlistment claim is concerned, in view of the allegations in the complaint, the record before us, and the way in which the appeal has been argued, we are not in a position to decide whether the district court had jurisdiction to adjudicate the claim. Accordingly, we reverse the transfer order in-part, vacate it in-part, and remand the case to the district court for further proceedings.

## BACKGROUND

### I.

Insofar as they relate to the issues before us, the facts are not in dispute. At the time of the events giving rise to this litigation, James had served in the Army as an enlisted man for almost twenty years and held the rank of Sergeant First Class. He was stationed at Schofield Barracks in Hawaii.

One of James' duties was to schedule and coordinate random drug testing for the soldiers in his unit. When he did so, he was not required to schedule testing for himself. On July 22, 1988, however, James voluntarily submitted his own urine specimen for testing. When the specimen was analyzed, it tested positive for cocaine, and re-testing confirmed the result. On November 4, 1988, for having wrongfully possessed cocaine-laced tea, James received a non-judicial punishment under Article 15 of the Uniform Code of Military Justice, *see* 10 U.S.C. § 815 (1994), in the form of forfeiture of $450 pay for two months. James appealed the Article 15 decision, but the appeal was denied.

In April of 1989, administrative discharge proceedings were commenced against James. Accordingly, a Board of Officers hearing was convened pursuant to Army Regulation (AR) 15–6 and AR 635–200 to determine whether James should be discharged for having committed an offense in violation of Army drug abuse regulations.[1] In due course, the Board determined that James was innocent of knowingly ingesting cocaine and recommended that he be retained in the Army.

On April 18, 1989, James' company commander initiated bar to reenlistment proceedings against James under AR 601–280.[2] The basis for the proceedings was the non-judicial punishment that had been levied against James and his positive drug test. At the same time, James submitted a request to have his current enlistment extended by five months so that, for retirement purposes, he could leave the Army with twenty years of service. *See* 10 U.S.C. § 3914 (1994) (providing that an enlisted member of the Army with at least twenty years of service may retire). Lt. Ledouceur, James' immediate commander, approved the enlistment extension on April 24, 1989. On May 4, 1989, James' Battalion Commander recommended that James be barred from reenlistment but that he be allowed to extend his enlistment

for the requested five-month period. The final deciding official, James' Division Commander, approved the bar to reenlistment, but denied the request for an extension of enlistment. This final action took place on July 20, 1989.

On August 1, 1989, James was informed that the bar to his reenlistment had been approved and that he would not be permitted to extend his enlistment for an additional five months. Two days later, on August 3, the end of his current term of enlistment, James was honorably discharged from the Army.

On February 13, 1992, James applied to the Army Board for Correction of Military Records (ABCMR) for correction of his service record. Specifically, he asked that the bar to reenlistment be removed from his record and that he be allowed to serve in the Army for an additional five months so that he could attain twenty years of service for retirement purposes. On November 24, 1993, the ABCMR denied the request.

## II.

On May 13, 1996, James filed suit in the district court, naming as defendants his former base commander, Col. Philip J. Schrock, and Togo D. West, Jr., then-Secretary of the Army. In the first paragraph of his complaint, James summarized his action as follows:

This is a complaint for Mandamus relief and for relief under the Administrative Procedure[ ] Act (5 U.S.C. § 701 et. se[q.] ) seeking an order compelling the Army to correct plaintiff's military records and restore plaintiff's reputation by deleting from those records a Bar to Reenlistment improperly imposed 5 months before plaintiff would have attained 20 years in service and retirement eligibility. Plaintiff further asks that his military record be corrected to reflect that he had 20 years of active

---

**1.** AR 15–6 authorizes the appointment of a Board of Officers to conduct investigations and to report findings of fact. *See* AR 15–6 (1996). AR 635–200 provides that soldiers in the grade of sergeant and above must be processed for separation upon discovery of a drug offense. *See* AR 635–200 § 14.12.C (1996).

**2.** A bar to reenlistment prevents a soldier from reenlisting in the Army following the conclusion of the current enlistment period. The bar is used to deny reenlistment to soldiers whose retention is not in the best interest of the military service. *See* AR 601–280 § 6–1 (1990).

duty service and that he be granted retirement pay and benefits accordingly.

In the very next paragraph of the complaint, under the heading "JURISDICTION," James asserted that his action arose under "the due process clause of the Fifth Amendment to the U.S. Constitution, the laws of the United States, including the Administrative Procedure[ ] Act (5 U.S.C. § 701 et. se[q.] ), and the regulations of the United States Army." James stated that the district court had jurisdiction to adjudicate his claims under 28 U.S.C. §§ 1331, 1361, 1651, 2201, and 2202 (1994).

In the body of his complaint, James asserted that the actions of the Army in discharging him, in refusing to permit him to extend his enlistment for five months, and in imposing the bar to reenlistment deprived him of the right to due process guaranteed by the Fifth Amendment to the Constitution. He also asserted that the denial of his request to extend his enlistment and the imposition of the bar to reenlistment constituted punishment and violated the Fifth Amendment's Double Jeopardy Clause, because the Army previously had unsuccessfully sought to achieve the same results through the administrative discharge proceedings.

Specifically, in paragraph 19 of his complaint, James stated that, under Army Regulations, authority to give final approval to his request to extend his enlistment rested with Lt. Ledouceur, his immediate commander. Accordingly, he asserted in paragraph 23 of the complaint:

Plaintiff's request for extension of enlistment was already approved and in effect as of April 24, 1989. The Bar to Reenlistment imposed upon plaintiff was not finally approved until July 20, 1989. The Bar to Reenlistment should therefore not have operated to prevent plaintiff from serving out the 5 months remaining to obtain retirement eligibility.

James further asserted, in paragraph 25 of his complaint, that Army Regulations then in effect provided no standards governing when an extension of enlistment for purposes of attaining retirement should be granted or denied in the context of a bar to reenlistment. "By granting Army officials total discretion to determine whether or not to allow extensions of enlistment in these circumstances, the regulations violate U.S. Constitutional Due Process requirements," James alleged.

As far as the bar to reenlistment itself was concerned, James alleged that, at the time of his discharge, he asked about his right to appeal but was told that he had no such right. James asserted that the denial of his right to appeal "violated AR 601–280 6–5e, which provides that soldiers desiring to submit an appeal to a Bar to Reenlistment will not be involuntarily separated while an appeal is pending, and that from the time he is informed that the Bar has been approved, the soldier shall be allowed seven days in which to submit an appeal."

James concluded his complaint with the following prayer for relief:

WHEREFORE, plaintiff prays that the Court make the following orders and judgments:

a. Issue an order directing the defendants to correct plaintiff's Army personnel record as follows:

(1) to reflect 20 years active duty service and eligibility for retirement retroactive to the date that plaintiff would have attained 20 years service had his request for extension of enlistment been properly granted;

(2) to remove the Bar to Reenlistment and the statements thereupon suggesting that plaintiff engaged in illegal drug use.

b. Award plaintiff reasonable attorney's fees and the costs of this action, and;

c. Grant such other and further relief as the Court deems just and proper.

In due course, the government moved to dismiss the complaint on the ground that the district court lacked jurisdiction because the United States had not waived sovereign immunity with respect to the various claims asserted by James. In its motion, the government contended that court lacked jurisdiction under the APA for two separate reasons. First, the government argued that James' suit was one for damages rather than

injunctive relief, and therefore beyond the scope of 5 U.S.C. § 702. Second, the government argued that, even if James' suit could be construed as being for injunctive relief, pursuant to 5 U.S.C. § 704 the action could not be maintained in the district court under the APA because an adequate remedy was available in another court, specifically, the Court of Federal Claims. Responding to the government's motion, James argued that he was seeking only equitable relief and that therefore his action did not fall within the jurisdiction of the Court of Federal Claims. He also argued that, even if his claims did not fit within the purview of the APA, the district court still had jurisdiction to grant mandamus relief under 28 U.S.C. § 1361.

As noted above, on January 15, 1997, the district court held that it lacked jurisdiction over the claims asserted by James and ordered the case transferred to the Court of Federal Claims. *See James*, 1997 WL 26303, *4. In so doing, the court rejected James' arguments concerning the nature of his action. "First," the court stated, "plaintiff's claim may properly be viewed as one for damages as well as injunctive relief." *Id.*, 1997 WL 26303, *2. The district court reasoned that, if James were granted the relief he was requesting (correction of his records to show twenty years of active duty), the Army would owe him five months active duty pay (because his attaining twenty years of active duty would depend upon his final enlistment being extended for five months) and approximately six years of pension payments. *See id.* Next, the district court rejected James' argument that the Court of Federal Claims lacked jurisdiction because only injunctive relief was being sought. The court stated that "[t]he flaw in this logic" was that James could easily have overcome the jurisdictional hurdle in the Court of Federal Claims "by adding a claim for the back pay and retirement benefits that would necessarily follow from a grant of injunctive relief." *Id.*, 1997 WL 26303, *3. The court observed that "[s]uits seeking correction of military records and back pay and retirement benefits are a normal part of the [Court of Federal Claims'] jurisdiction." *Id.* Finally, the district court turned aside James' argument that, even if the complaint did assert claims

not within the scope of the APA, he still was entitled to mandamus relief under 28 U.S.C. § 1361. The court noted that the mandamus statute did not act as a waiver of sovereign immunity and that without such a waiver under the APA, there was no basis for the court to assert jurisdiction over a mandamus action. *See id.*, 1997 WL 26303, *3.

On March 24, 1997, the district court denied James' motion pursuant to Fed.R.Civ.P. 59(e) to amend his complaint to cure the jurisdictional defect. James timely appealed the transfer order on May 22, 1997. We have jurisdiction pursuant to 28 U.S.C. § 1292(d)(4) (1994).

## DISCUSSION

### I.

■ The federal transfer statute, 28 U.S.C. § 1631, provides that a court may transfer an action to another court if the transferor court lacks jurisdiction to hear the action and the transferee court would have jurisdiction. *See National Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196, 198 (Fed.Cir.1997). We review a district court's decision to transfer a case to the Court of Federal Claims *de novo* because it is jurisdictional. *See Benderson Dev. Co., Inc. v. United States Postal Serv.*, 998 F.2d 959, 962 (Fed.Cir.1993).

### II.

■ The district court ordered James' suit transferred because it concluded that it did not have jurisdiction to hear the case under the APA, the statute which James invoked when he filed his action. The APA waives the sovereign immunity of the United States only for "[a]n action in a court of the United States seeking relief other than money damages." 5 U.S.C. § 702. As we have explained, "[i]n an action for 'money damages,' a plaintiff must seek a waiver of sovereign immunity elsewhere, such as in the Tucker Act." *National Ctr. for Mfg. Sciences*, 114 F.3d at 199. In addition, the APA provides that judicial review of agency action is available only "if there is no other adequate remedy in a court." 5 U.S.C. § 704. In other

words, "if a Tucker Act suit in the Court of Federal Claims provides an adequate remedy, APA review in the district court is not available." *National Ctr. for Mfg. Sciences*, 114 F.3d at 199. Thus, the focus of our inquiry must be whether James' action was one for money damages and whether a suit in the Court of Federal Claims could provide James with an adequate remedy.

## A.

The Supreme Court addressed the scope of the APA's waiver of sovereign immunity in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In *Bowen*, the Commonwealth of Massachusetts challenged a final order of the Secretary of Health and Human Services refusing to reimburse Massachusetts through the Medicaid program for services related to intermediate care facilities for the mentally retarded. Massachusetts filed a complaint in district court alleging jurisdiction pursuant to 28 U.S.C. § 1331 and a waiver of sovereign immunity under the APA. In concluding that the relief sought by Massachusetts was not "money damages" within the meaning of the APA, the Court stated that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" 487 U.S. at 893, 108 S.Ct. 2722. The Court distinguished between compensatory damages, which "'are given to the plaintiff to substitute for a suffered loss'" and specific remedies, which "'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" *Id.* at 895, 108 S.Ct. 2722 (citing *Maryland Dept. of Human Resources v. Department of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C.Cir.1985)). The Court determined that Massachusetts' claim involved a specific remedy and that therefore the district court had jurisdiction.

In *Katz v. Cisneros*, 16 F.3d 1204 (Fed.Cir. 1994), this court was faced with a jurisdictional issue similar to that presented in *Bowen*. In *Katz*, a housing developer sought payments from the Department of Housing and Urban Development under the Housing Act of 1937. The court analyzed the case

under *Bowen* and held that the developer's suit had been properly brought in district court, rather than in the Court of Federal Claims. The court did so because it concluded that the plaintiff was seeking "payments to which it alleges it is entitled pursuant to federal statute[s] and regulations; it does not seek money as compensation for a loss suffered." *Id.* at 1208. With this background before us, we turn to the contentions of the parties in this case.

■ In his complaint, James states that his action is for mandamus relief under the APA, and he asserts that jurisdiction lies in the district court under six separate statutes, 28 U.S.C. §§ 1331, 1361, 1651, 2201, and 2202. Significantly, none of these statutes is specifically directed to money damages. Section 1331, the federal question statute, gives the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to § 1361, the district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Section 1651 is the All Writs Act, while §§ 2201 and 2202, respectively, empower the district courts to grant declaratory judgment relief, and "[f]urther necessary or proper relief based on a declaratory judgment." Finally, as seen above, in the prayer for relief at the end of his complaint, James asks the district court to correct his military record to reflect twenty years of active duty service and eligibility for retirement and the removal of the bar to reenlistment. In short, on its face, James' complaint does not present a claim for money damages. Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must "look to the true nature of the action in determining the existence or not of jurisdiction." *Katz*, 16 F.3d at 1207.

James is seeking to have his records corrected to reflect twenty years active duty service and, therefore, eligibility for retirement, and to have the bar to reenlistment removed. He contends that he is entitled to the record correction relating to retirement because he should have been allowed to ex-

tend his enlistment for five months, which would have had the effect of allowing him to reach the twenty-year mark. James is saying to the district court, "The Army wronged me when it did not permit me to extend my enlistment for five months. If it had allowed me to extend my enlistment, I would have been able to retire with twenty years of active duty service. As a result, I would have been eligible for various benefits. The Army also wronged me when it imposed the bar to reenlistment and denied me my right to appeal the imposition of the bar."

As far as the matter of the bar to reenlistment is concerned, James clearly is not seeking money damages. Rather, he is asserting entitlement to two specific things: removal of the bar and the right to appeal the imposition of the bar. Thus, these claims come within the scope of the waiver of sovereign immunity in 5 U.S.C. § 702 ("[a]n action in a court of the United States seeking relief other than money damages").

James' challenge to the Army's denial of his request to extend his enlistment presents a more difficult question. In part B below, we discuss this issue at length in addressing whether the Court of Federal Claims would have jurisdiction over James' action. As we explain in part B, viewed one way, James' claim relating to the extension of his enlistment presents a claim for money damages which would place the claim outside of § 702's waiver of sovereign immunity. Viewed another way, however, the claim is not one for money damages, which would place it within § 702's waiver. For the reasons discussed in part B, at this juncture we are not in a position to determine the proper characterization of the claim. Accordingly, upon remand the district court will determine in the first instance whether James' claim relating to the extension of his enlistment is covered by the waiver of sovereign immunity in § 702.

B.

We turn now to the question of whether James' complaint runs afoul of the requirement in 5 U.S.C. § 704 that, in order for there to be a waiver of sovereign immunity under the APA, there must be "no other adequate remedy in a court." In this case, the "court" about which we are concerned is the Court of Federal Claims. The Tucker Act gives the Court of Federal Claims

> jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1994).

The Tucker Act, however, "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Thus, "in order to invoke jurisdiction under the Tucker Act, a plaintiff must point to a substantive right to money damages against the United States." *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed.Cir.1995). What this means is that a Tucker Act plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States. *See Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997); *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir.1995).

We address first James' allegations concerning the bar to reenlistment and the alleged denial of his right to appeal the bar. Plainly, these are not money claims. Rather, they are claims for equitable relief. It is true that limited equitable relief sometimes is available in Tucker Act suits. However, that equitable relief must be "an incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2) (1994). *See Bobula v. United States Department of Justice*, 970 F.2d 854, 859 (Fed.Cir.1992). Stated another way, the Court of Federal Claims has no power "to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment." *Austin v. United States*, 206 Ct.Cl. 719, 723 (1975). As discussed below, to the extent James argues that the action of Lt. Ledouceur extended his enlistment, he has

asserted a claim for money damages (the basic pay of his grade for the additional five months of his enlistment). However, removing the bar to reenlistment or granting James the right to appeal the imposition of the bar is not relief that would be "tied and subordinate to" an award of five months back pay. The reason is that there would be no need to consider the bar to reenlistment or the right to appeal the bar in deciding whether James was entitled to back pay by reason of a five month extension of his enlistment. In other words, the matter of the bar to reenlistment would be entirely unrelated to the back pay issue. *See Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). Thus, James' challenge to the bar to reenlistment and his claim that he was denied the right to appeal the bar are claims for equitable relief that lie outside the Tucker Act jurisdiction of the Court of Federal Claims.

■ As noted above, James broadly bases his causes of action on alleged violations of the Due Process Clause and the Double Jeopardy Clause of the Fifth Amendment. However, it is well established that the Court of Federal Claims lacks jurisdiction over such claims because neither of the two clauses is a money-mandating provision. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995) (due process); *Deggins v. United States*, 39 Fed. Cl. 617, 621 (1997) (double jeopardy), *appeal dismissed*, No. 98–5057, 1998 WL 216992, 152 F.3d 949 (Fed. Cir. Apr.24, 1998).

■ We next consider whether any statutory provision would enable James to establish jurisdiction in the Court of Federal Claims. As far as military personnel are concerned, 37 U.S.C. § 204 (1994) serves as a money-mandating statute. *See Holley*, 124 F.3d at 1465. It provides that "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which assigned...." If an enlisted member of the Armed Services is wrongfully discharged before the end of his or her current term of enlistment, the right to pay conferred by § 204 continues and serves as the basis for Tucker Act jurisdiction. *See Aus-*

*tin*, 206 Ct.Cl. at 722–23; *see also Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 810 (1979) (in banc) (stating that § 204 "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service" and serves as the basis for Tucker Act jurisdiction where a discharge is wrongful).

James was discharged on August 3, 1989, upon the completion of his then-current term of enlistment. He does not claim that the Army failed to pay him through the end of the term. Rather, his contention is that he should have been allowed to extend the term of his enlistment for five months, which would have given him twenty years of active service, thereby making him eligible for retirement benefits.

Once James' term of enlistment ended, he no longer was entitled to pay under 37 U.S.C. § 204, because he was no longer a service member. *See Testan*, 424 U.S. at 402, 96 S.Ct. 948 ("The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it."); *see also Dodson v. United States*, 988 F.2d 1199, 1208 (Fed.Cir.1993) ("[A]n enlisted serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired had he not been so discharged."). Thus, James could not have relied on § 204 as a money-mandating statute supporting Tucker Act jurisdiction in the Court of Federal Claims.

■ We also must consider, however, whether James could have relied upon his claim that the Army wrongfully denied his request to extend his enlistment to support Tucker Act jurisdiction. Such an extension would have given him the twenty years of active duty service he needed in order to be eligible for retirement. Extensions of enlistments are governed by 10 U.S.C. § 509 (1994) ("Voluntary extension of enlistments: periods and benefits"). In pertinent part, the statute provides that "[u]nder such regulations as the Secretary concerned may prescribe, the term of enlistment of a member of an armed force may be extended or reex-

tended with his written consent for any period." 10 U.S.C. § 509.

The Army's regulations governing extensions of enlistments are found at AR 601–280, § 3 (1990). As noted above, in his complaint, James makes two claims concerning the regulations. On the one hand, in paragraph 23 he asserts that Lt. Ledouceur had authority to give final approval to his request to extend his enlistment. Thus, he contends that the extension of his enlistment was "in effect as of April 24, 1989." On the other hand, apparently recognizing the complicating factor of the bar to reenlistment, James states in paragraph 25 that the regulations governing extensions of enlistments violate Constitutional requirements of due process because they "grant ... Army officials total discretion to determine whether or not to allow extensions of enlistment in these circumstances."

To the extent that James argues, see paragraph 23 of the complaint, that Lt. Ledouceur's action extended his enlistment, he has asserted a claim within the jurisdiction of the Court of Federal Claims. The reason is that the extension would have continued him in active duty status for five months. Accordingly, he would have been entitled to the basic pay of his grade pursuant to 37 U.S.C. § 204. If James was wrongfully discharged before the end of his extended term of enlistment, his right to pay continued and served as the basis for Tucker Act jurisdiction. In the case of a wrongful discharge during his unexpired term of enlistment (as extended), James would have been entitled to backpay from the period from the date of the discharge to the end of the extended term. *See Dodson*, 988 F.2d at 1208; *Austin*, 206 Ct.Cl. at 722–23. Conceivably, Tucker Act jurisdiction also could exist if, as a matter of law, the regulations gave one in James' circumstances "a firm right" to have his enlistment extended. *See Austin*, 206 Ct.Cl. at 724 ("In two cases we did find that an enlisted man had a firm right to reenlist, and therefore that his recovery did not end with the termination of his then enlistment.... [B]oth those holdings were grounded in special statutory rights of reenlistment [but] we would be inclined to the same result if the Navy had

bound itself by regulation to an automatic right of reenlistment."). Under either of these circumstances, the district court would lack jurisdiction pursuant to 5 U.S.C. § 704. However, to the extent that James' circumstances (subject to a bar to reenlistment) were such that the Army's regulations gave the chain of command discretion in the matter of the enlistment extension request, see paragraph 25 of the complaint, Tucker Act jurisdiction would not exist. The reason is that there would be no money-mandating statute or regulation to which James could point in support of such jurisdiction. The most that James could say was that he was in a situation in which there existed the possibility that there would be an extension of a status (being under a term of enlistment) in which the payment of money would be mandated by statute. Under those circumstances, James would be doing nothing more than challenging the Army's exercise of its discretion in denying him a five-month extension of his enlistment. Section 704 would not operate to bar suit in the district court.

We face two problems, however, in addressing the matter of the extension of the enlistment. The first is that the complaint that was filed in the district court presents alternative contentions. As just seen, one of these contentions points in the direction of Tucker Act jurisdiction; the other contention points away from it. The second is that, on appeal, neither James nor the government has briefed or argued the issue of exactly what the Army's extension-of-enlistment regulations require. Put another way, the parties have offered us no insight as to whether, insofar as they relate to this case, the regulations are of the "firm right" kind, so as to confer Tucker Act jurisdiction, or whether they are discretionary, so as to defeat such jurisdiction. Thus, as far as the issue of the extension of James' enlistment is concerned, we cannot say whether, under 5 U.S.C. § 704, "there is no other adequate remedy in a court."

In sum, the Court of Federal Claims would not have jurisdiction to adjudicate two of the claims in James' complaint, the challenge to the bar to reenlistment and the contention that the Army denied James his right to

appeal the bar. Thus, those claims are not barred from consideration in the district court by the mandate of 5 U.S.C. § 704 that APA review is available only "if there is no other adequate remedy in a court." As far as those claims are concerned, transfer to the Court of Federal Claims under 28 U.S.C. § 1631 is not available because § 1631 requires that the transferee court be one "in which the action . . . could have been brought at the time it was filed." An action with respect to those claims could not have been brought in the Court of Federal Claims. As far as the claim relating to James' attempt to extend his enlistment is concerned, on the record before us we are not in a position to say whether or not the Court of Federal Claims would have jurisdiction. Under these circumstances, we believe that this issue should, in the first instance, be addressed by the district court.

The dissent takes the position that this case is indistinguishable from *Mitchell v. United States*, 930 F.2d 893 (Fed.Cir.1991), and that therefore our decision today conflicts with *Mitchell*. We disagree.

The question before us in *Mitchell* was whether jurisdiction over the claims at issue was proper in district court under the APA or in what was then the United States Claims Court under the Tucker Act. After conducting a *Bowen*-type analysis, we determined that 5 U.S.C. § 704 barred Mitchell's suit in the district court because an adequate remedy was available to Mitchell in the Claims Court. Mitchell, who was a lieutenant colonel in the Air Force, was discharged from the military pursuant to a statute that required the transfer or discharge of certain reserve officers after 28 years of commissioned service. Before his discharge, Mitchell asked to remain on active duty for an additional two years, but the Air Force denied the request. With such an extension,

Mitchell would have qualified for retirement with twenty years of service. In challenging his separation from the Air Force, Mitchell argued that his discharge was unlawful because he was covered by a statute then in effect that prohibited involuntary discharges within two years of reaching the twenty-year retirement threshold. Accordingly, Mitchell sought to recover active duty credit toward retirement, active duty back pay, reinstatement to active duty until properly retired, attorney fees, and any further just relief. *Mitchell*, 930 F.2d at 894. The critical point is that Mitchell asserted that he was entitled to back pay because a statute (the two-year sanctuary provision) gave him the right to remain on active duty until he had accrued twenty years of service and because he was entitled to be paid for the services he performed while on active duty. In other words, Mitchell claimed a present entitlement to money in the form of back pay, a claim clearly within the Tucker Act jurisdiction of the Claims Court. Nothing we say today is inconsistent with *Mitchell*. As we have explained above, James' claims relating to the bar to reenlistment are not money claims. As far as the claim relating to the extension of James' enlistment is concerned, we acknowledge that it may constitute a money claim within the jurisdiction of the Court of Federal Claims, a matter which the district court will decide on remand.[3]

## CONCLUSION

For the foregoing reasons, the order transferring this case to the Court of Federal Claims is reversed-in-part and vacated-in-part. The case is remanded to the district court so that, consistent with this opinion, the court may address the merits of the two claims relating to the bar to reenlistment and may determine whether it has jurisdiction

---

**3.** The dissent expresses the concern that our decision "adds unnecessary complexity and unpredictability to an area of the law that has been and should continue to be relatively simple and stable." According to the Advisory Committee on Judicial Review of Military Administrative Personnel Actions, however, the law in this area is marked by complex and sometimes inconsistent procedural rules. *See* Report of the Committee on Judicial Review of Administrative

Military Personnel Actions of the Department of Defense 4–10 (December 15, 1996) (on file at the library of the United States Court of Appeals for the Federal Circuit). Faced with the jurisdictional limitations on the district court and the Court of Federal Claims, we have no alternative but to examine each claim asserted by James to determine whether his action is subject to the jurisdiction of the district court under the APA.

with respect to the extension of enlistment claim.[4]

## COSTS

Each party shall bear its own costs.

*REVERSED–IN–PART, VACATED–IN–PART, and REMANDED.*

MICHEL, Circuit Judge, dissenting.

I write in dissent for two reasons. First, I believe that the majority's analysis is in direct conflict with the precedent of this court and the Supreme Court. Second, I view the majority's holding as frustrating the legislative purpose of the Tucker Act as amended and likely to create unnecessary confusion, unpredictability, expense, and delay in the litigation of claims for military pay and benefits.

Section 702 of the APA permits district court review of agency actions provided that the suit is "seeking relief other than money damages." Even then, however, section 704 prohibits APA review if there is an "adequate remedy" in another court. The majority concludes that relief may be sought in federal district court pursuant to section 702 of the APA with regard to James's challenge to the imposition of the bar to reenlistment and his request that the bar be removed, but is uncertain as to whether there may be APA relief for James's claim to extend his last reenlistment. Thus, for those claims that the majority regards as subject to district court jurisdiction, it does not consider that the Court of Federal Claims offers an "adequate remedy" under the Tucker Act.

The majority sets forth its analysis in light of the "background" of *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). *Bowen*, however, creates only a limited exception to Tucker Act jurisdiction. This case falls within the general rule.

In *Bowen* the Supreme Court held that a state's suit seeking reimbursement for certain medical and rehabilitative expenses pursuant to the federal Medicaid scheme was a suit over which only a federal district court,

not the United States Claims Court, the predecessor court to the United States Court of Federal Claims, had jurisdiction. As the majority notes, the Supreme Court quoted approvingly the D.C. Circuit's interpretation of the term "money damages" as used in the APA, 5 U.S.C. § 702:

> The term "money damages," we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled. Thus, while in many instances an award of money is an award of damages, [o]ccasionally a money award is also a specie remedy. Courts frequently describe equitable actions for monetary relief under a contract in exactly those terms.

*Bowen*, 487 U.S. at 895, 108 S.Ct. 2722, quoting *Maryland Dep't of Human Resources v. Department of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C.Cir.1985) (citations and internal quotation marks omitted). In this context, the Supreme Court concluded that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* at 893, 108 S.Ct. 2722. However, this conclusion should not be read to suggest that claims for money may be heard under the APA, other than in the most unusual circumstances. Indeed, the Court took particular note of the "complex questions of federal-state interaction" raised in Medicaid disallowance decisions. *Id.* at 908, 108 S.Ct. 2722. Thus, as the Court explained:

> There are, of course, many statutory actions over which the Claims Court has jurisdiction that enforce a statutory mandate for the payment of money rather than obtain compensation for the Government's failure to so pay. The jurisdiction of the Claims Court, however, is not expressly limited to actions for money damages, whereas that term does define the limits of the exception to § 702. Moreover, such statutes, unlike a complex scheme such as

---

**4.** Needless to say, we express no views on the merits of James' claims.

the Medicaid Act that governs a set of intricate, ongoing relationships between the States and the Federal Government, are all statutes that provide compensation for specific instances of past injuries or labors; suits brought under these statutes do not require the type of injunctive and declaratory powers that the district courts can bring to bear in suits under the Medicaid Act. *Thus, to the extent that suits to enforce these statutes can be considered suits for specific relief, suits under the Tucker Act in the Claims Court offer precisely the sort of "special and adequate review procedures" that § 704 requires to direct litigation away from the district courts.*

*Id.* at 900 n. 31, 108 S.Ct. 2722 (citations omitted and emphasis added).

Under this *Bowen* analysis, it seems plain that James's suit is precisely the type of suit that should be heard in the Court of Federal Claims rather than federal district court. "Complex questions of federal-state interaction" have not been raised. *Id.* at 908, 108 S.Ct. 2722. This is not the type of dispute "that a district court would be in a better position to understand and evaluate than a single tribunal headquartered in Washington." *Id.* The dispute does not "involve the construction of state law." *Id.* Moreover, there is no "complex ongoing relationship between the parties" to monitor and referee. *Id.* at 905, 108 S.Ct. 2722. There is no need for "prospective relief." *Id.* Nor is it necessary to "oust a district court of its normal jurisdiction under the APA." *Id.* at 904, 108 S.Ct. 2722. In short, James is seeking money damages from the federal government, the touchstone of Tucker Act jurisdiction. The Court of Federal Claims offers James a wholly adequate remedy. *See* 5 U.S.C. § 704 (1994).

The majority is troubled by the form of James's complaint and has subdivided it into several claims, some of which, after a careful parsing, it considers should be heard in district court pursuant to the APA and others perhaps in the Court of Federal Claims but only after additional jurisdictional fact-finding. I do not read James's complaint in so formalistic a manner, but instead read it as simply requesting retirement pay and benefits, the payment of which necessitates a correction of military records. This reading is based upon clear precedent that "[s]ubstance, not form, is controlling.... It is well-settled that a plaintiff ... should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute." *Williams v. Secretary of the Navy,* 787 F.2d 552, 557 (Fed. Cir.1986) (internal quotation marks omitted). *See also Brazos Elec. Power Coop. v. United States,* 144 F.3d 784, 787 (Fed.Cir.1998) ("Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading and, accordingly, we customarily look to the substance of the pleadings rather than their form."); *National Ctr. for Mfg. Sciences v. United States,* 114 F.3d 196, 199 (Fed.Cir. 1997) ("Notwithstanding the imprecision of the complaint, we therefore look to the true nature of the action in determining the existence or not of jurisdiction." (internal quotation marks omitted)); *Katz v. Cisneros,* 16 F.3d 1204, 1207 (Fed.Cir.1994) ("Regardless of the characterization of the case ascribed by Hollywood Associates in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction."); *Maier v. Orr,* 754 F.2d 973, 982 (Fed.Cir. 1985) ("We look to the true nature of the action in the district court in determining jurisdiction of an appeal. A civil action for recovery of money from the United States cannot be disguised by couching it in mandamus terms." (citation omitted)).[1]

1. It is also important to note that the above-quoted cases all refer to determining jurisdiction based upon "the true nature of the *action,*" *National Ctr. for Mfg. Sciences,* 114 F.3d at 199; *Katz,* 16 F.3d at 1207; *Maier,* 754 F.2d at 973 (emphasis added to all), or the "substance" or "casting" of the *"pleadings,"* *Brazos,* 144 F.3d at 787; *Williams,* 787 F.2d at 557 (emphasis added to both). It is significant that these cases do not refer to examining the substance of each individual claim or sub-claim within the overall action to determine which court has jurisdiction to hear each claim or sub-claim. The majority's approach of carving out each claim or sub-claim for a separate jurisdictional analysis completely negates our prior precedent under which juris-

A fair reading of James's complaint indicates that he is, at bottom, seeking only retirement pay and benefits. The preamble to the complaint requests that James's "military record be corrected to reflect that he had 20 years of active duty service *and that he be granted retirement pay and benefits accordingly.*" (emphasis added). James's non-eligibility for retirement benefits is then mentioned in nine of the forty-seven paragraphs of the complaint (thirty-six of these forty-seven paragraphs simply allege the "facts"). Following this, two of James's four claims mention James's non-eligibility for retirement benefits. Finally, James's prayer for relief requests that his records be amended "to reflect 20 years active duty service and *eligibility for retirement* retroactive to the date that plaintiff would have attained 20 years service had his request for extension of enlistment been properly granted" (emphasis added). Consequently, I cannot agree with the majority's conclusion that "on its face, James' complaint does not suggest a claim for money damages." Rather, I read this complaint as signaling that the nature of this action is a request for retirement pay and benefits.

It is true that James has also requested certain types of injunctive relief—he has asked that his records be corrected to reflect twenty years active duty service and that the Bar to Reenlistment be removed. However, this injunctive relief is simply the formality that must be completed before the money payment can be made. Such injunctive relief is entirely within Congress's contemplation that, under the Tucker Act, the Court of Federal Claims "may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position,

placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2) (1994). Indeed, the legislative history of this statute evidences a clear intent that claims such as James's, for retirement benefits and correction of military records, would be heard in just one court— the then Court of Claims—and not in two separate actions in the Court of Claims and federal district court. *See* S.Rep. No. 92–415 at 3 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3116, 3118 (explaining that the amendment of the Tucker Act to allow such collateral or incidental injunctive relief was, in part, to permit "monetary claims which are based on retirements in an improper status"); *Collateral Relief in the Court of Claims; Recall of Retired Commissioners; Hearing Before Subcomm. No. 2 of the Comm. on the Judiciary, House of Representatives*, 92nd Cong. 11 (1972) (Statement of Wilson Cowen, Chief Judge, United States Court of Claims)[2] ("The purpose of the bill is to allow citizens who have monetary claims falling within the jurisdiction of the court to obtain all necessary relief in one action.... The Court of Claims ... has many suits brought by military personnel. These are monetary claims based on retirement in an improper status, such as failure to award disability retirement pay or retirement pay at a proper rank, and so on. Some of the cases are also based upon an improper dismissal from the service. In such cases, the Court of Claims can grant a monetary judgment but cannot alter the serviceman's military status as previously determined by a military board. This bill would permit the Court of Claims to grant such

diction was determined by looking to the "true nature of the *action.*" The result of this new piecemeal method of jurisdictional analysis will be to encourage many costly and time-consuming disputes regarding what exactly is being claimed and where each of these claims should be heard. Moreover, the majority's approach also will encourage courts to dissect actions that are based on one underlying set of facts, into two cases heard by different courts operating in separate geographic locations and under distinct procedural rules. Our prior precedent, by looking to "the true nature of the action" or the "substance" or "casting" of the "pleadings," avoided

the unnecessary creation of such confusion and inefficiency.

**2.** Chief Judge Cowen proposed the statutory language at issue here in a letter to Harold D. Donahue, Chairman of Subcommittee No. 2 of the Committee on the Judiciary in a letter dated March 2, 1972. This language was incorporated into H.R. 12392 and remained unchanged when the bill was finally enacted as Public Law 92–415 on August 29, 1972. *See generally*, Anthony J. Marchetta, *Equitable Relief in the United States Court of Claims Under Public Law 92–415*, 23 Am. U.L.Rev. 465, 472–73 (1973).

military personnel the complete relief which they can now obtain only through subsequent discretionary administrative action, or by filing another suit in district court to obtain a declaratory judgment and a writ of mandamus ordering the restoration of the statutory rights of the serviceman."); *Collateral Relief in the Court of Claims; Recall of Retired Commissioners; Hearing Before Subcomm. No. 2 of the Comm. on the Judiciary, House of Representatives*, 92nd Cong. 15 (1972) (Statement of Marion Bennett, Chief Commissioner, United States Court of Claims) ("[W]e know of a few glaring cases where it has been of great expense to people who could ill afford to prosecute their case in more than one forum, where they have had to do this.... It is not so much that we are flooded by this type of case as that we occasionally see plaintiffs who holler their heads off because they have to go to more than one place for relief.").

The majority holds that James's challenge to the bar to reenlistment and his demand that the bar be removed should be heard in federal district court under the APA. I am not persuaded by the reasoning behind this conclusion. As an initial matter, as explained above, I believe that this is the type of incidental or collateral relief that Congress intended would be granted pursuant to 28 U.S.C. § 1491(a)(2). Just as significantly, however, I do not agree with the majority's treatment of James's claims regarding the bar to reenlistment as constituting distinct claims that may be severed from his action and heard in a separate courthouse. As I read James's complaint, his claims regarding the bar to reenlistment are entirely intertwined with his other claims regarding retirement benefits. Indeed, paragraph a of James's prayer for relief requested that an order be issued requiring the correction of James's military records with respect to both reflecting twenty years of active duty service and removing the bar to reenlistment (albeit in separate sub-paragraphs). Similarly, the claims are entangled throughout the complaint. Thus, for example, the preamble to the complaint states, inter alia, that James seeks an order "deleting from [his] records a Bar to Reenlistment improperly imposed 5 months before [James] would

have attained twenty years in service and retirement eligibility." Paragraph 2 recites, inter alia, that "James was involuntarily discharged from the United States Army ... less than 5 months before he would have attained 20 years in service and full retirement eligibility. This discharge resulted from Army decisions to deny him a 5 month extension of his then-current enlistment, and to impose a Bar to Reenlistment...." The bar to reenlistment and James's eligibility for retirement benefits are further interwoven in paragraph 23, which alleges that "[due to its late date of approval], [t]he Bar to Reenlistment should therefore not have operated to prevent [James] from serving out the 5 months remaining to obtain retirement eligibility." Similar such statements linking the bar to reenlistment with James's ineligibility for retirement benefits are also found in paragraphs 25 and 28. Perhaps even more significantly, the four "Claims" in James's complaint contain no separate or distinct demands regarding the bar to reenlistment. James's "First Claim" is that "Defendants' actions were contrary to law, had no basis in fact, were arbitrary and capricious and an abuse of discretion, all in violation of plaintiff's due process rights under the Fifth Amendment to the United States Constitution." His "Second Claim" also did not set forth a distinct bar to reenlistment claim, but rather alleged a Due Process violation "by failing and refusing to follow the letter and spirit of the Army regulations governing [James's] request for extension of enlistment, the Bar to Reenlistment, [James's] involuntary discharge, and [James's] eligibility for retirement." James's "Third Claim," alleged a Due Process violation for "failing and refusing to follow the letter and spirit of Department of Defense Directive 1010.4, codified at 32 C.F.R. § 62.4." Finally, James's "Fourth Claim" asserted that the allegedly "improper use of the Bar to Reenlistment and denial of [James's] request for extension to accomplish the same result ( [James's] involuntary discharge and the denial of [James's] retirement benefits) that had been sought through the prior Administrative Discharge Board ... violated the Double Jeopardy Clause of the Fifth Amendment...." Thus, through-

out James's complaint, there is no distinct claim regarding the bar to reenlistment but, rather, the bar to reenlistment is mentioned wholly in relation to James's eligibility for retirement benefits. Consequently, "the true nature of the action" is an attempt to obtain retirement benefits—money—and the removal of the bar to reenlistment is merely subsidiary to the pecuniary nature of the action. *See National Ctr. for Mfg. Sciences,* 114 F.3d at 199; *Katz,* 16 F.3d at 1207; *Maier,* 754 F.2d at 982.

Furthermore, viewing the dispute over the bar to reenlistment as a dispute involving injunctive relief ignores the reality of the situation. Despite the statements to the contrary in his brief, it is surely inconceivable that, almost ten years after his discharge, James truly wants to reenlist and once again become a First Sergeant in the Army. Indeed, even if James were permitted to reenlist, he would have to go on full-time active duty for an obligatory five years. While James in his brief offers to "serve out the five months remaining to obtain retirement eligibility," *Appellant's Reply Br.* at 3 n.1, he, not surprisingly, makes no offer to serve for five years. Thus, James's request that the bar to reenlistment be removed is not in his complaint because he wants to reenlist in the Army, rather, James simply wants five months of credit to qualify for his retirement benefits. Treating his references to the bar to reenlistment as constituting a separate, equitable action ignores the context of the complaint and the realities of the situation.

The majority's decision to permit James to attempt to seek relief in federal district court under the APA also ignores the Court of Federal Claims's "extensive experience reviewing decisions of corrections boards in military pay cases." *Mitchell v. United States,* 930 F.2d 893, 896 (Fed.Cir.1991). As we have noted:

the experience of the [Court of Federal Claims and its predecessor courts] in military pay cases extends back to the nineteenth century origins of the court. *See, e.g., Straughan v. United States,* 1 Ct.Cl. 324 (1865); *Conrad v. United States,* 32 Ct.Cl. 139 (1897); *Walsh v. United States,* 43 Ct.Cl. 225 (1908).

*Id.* The decision of the court today gives no credence to this lengthy gathering of institutional expertise, but instead permits suits that are essentially military pay cases to be litigated in any one of ninety-four federal judicial districts before federal district court judges who will likely have little or no experience in the arcane law of military pay entitlement and record correction.

I do not believe that James should be permitted to evade the Tucker Act and its cautious waiver of sovereign immunity by merely couching his prayer for relief in partly equitable terms. Moreover, I believe that our precedents have uniformly rejected similar such attempts. In particular, I find *Mitchell* to be indistinguishable from this case. Mitchell, a reservist, was discharged from the Air Force pursuant to statutory authority some two years before he was eligible for retirement with twenty years service under 10 U.S.C. § 8911 (1956). *See Mitchell,* 930 F.2d at 894. After exhausting administrative remedies, Mitchell filed suit in the Claims Court and, similarly to James, sought active duty credit toward retirement, active duty pay, reinstatement to active duty until properly retired, attorney fees, and any further just relief. See *id.* The Claims Court dismissed the suit and Mitchell filed a virtually identical suit in district court under the APA. *See id.* After the district court denied the Air Force's motion to dismiss or, alternatively, to transfer the case to the Claims Court, the Air Force appealed to this court. *See id.* After examining the standard set forth in *Bowen,* this court reasoned that:

Mitchell's complaint requests back pay, reinstatement, and correction of records. By statute, the Claims Court may, in appropriate military back pay cases, "provide an entire remedy," including "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records". 28 U.S.C. § 1491(a)(2). The Claims Court has, in fact, ordered back pay (*Skinner v. United States,* 594 F.2d 824, 219 Ct.Cl. 322 (1979); *Sanders v. United States,* 594 F.2d 804, 219 Ct.Cl. 285 (1979); *Burd v. United States,* 19 Cl.Ct. 515 (1990); *Casey v. United States,* 8 Cl.Ct. 234 (1985)), restoration

to military office, (*Skinner, Sanders, Yee v. United States,* 512 F.2d 1383, 206 Ct.Cl. 388 (1975); *Murphy v. United States,* 16 Cl.Ct. 385 (1989)), placement in correct retirement status, (*Gant v. United States,* 18 Cl.Ct. 442 (1989); *Casey* ) and correction of military records, (*Skinner, Sanders, Yee, Burd, Gant, Murphy, Casey*). In sum, the Claims Court has explicit statutory authority, which it has exercised, to provide all relief Mitchell requests.

*Mitchell,* 930 F.2d at 896. Accordingly, because the Claims Court offered an "adequate remedy," this court concluded that section 704 of the APA mandated that Mitchell's claim be heard in the Claims Court.

I find James's claim to be materially indistinguishable from that presented in *Mitchell.* Both servicemen sought to have their records amended to reflect an extended period of service in order that they would be placed in a different retirement status and receive the attendant retirement pay and benefits. James attempts to distinguish his claim from *Mitchell* on the grounds that the *Mitchell* claimant was an officer, whereas he was an enlisted man. Accordingly, because he, as an enlisted man, had no statutory right to reenlist, James contends that he had no right to back pay and that the Court of Federal Claims therefore lacks jurisdiction. I do not find this distinction compelling. James's claim here, properly read, is for an extension of his enlistment, not to re-enlist. Such a claim for extension of enlistment arises under 10 U.S.C. § 509 (1994) and, if successful, also gives rise to an entitlement to recovery. Thus, I consider James's jurisdictional question to be controlled by *Mitchell.*

My concern with today's decision is not simply that it conflicts with precedent, but also that it adds unnecessary complexity and unpredictability to an area of the law that has been and should continue to be relatively simple and stable.[3] This appeal, after all, merely concerns the question of in which courthouse James will have his claim heard. The process of finding the correct courthouse ought to be swift and uncomplicated, especially when the claimants are service members seeking pay and benefits. I find it difficult to accept that Congress intended that the members of our armed forces, simply to receive their due and owing pay and benefits, be required to negotiate such labyrinthine jurisdictional rules. Thus, I disagree with the very approach of the majority. We should not be dissecting complaints so that some parts may end up in a California courthouse and others in Washington, D.C. Not least, when the substance of that complaint has one underlying goal: money. Consequently, I fear that our decision today will not only embolden those who care to forum-shop and evade the Tucker Act's prudent waiver of sovereign immunity, but also will cause confusion, uncertainty, delay, expense, and inconsistency of results for litigants and their attorneys, not to mention government attorneys paid with tax revenues.

Finally, the most worrisome effect of today's decision is that it creates a new, easily-utilized escape route from Tucker Act jurisdiction in the Court of Federal Claims for military pay and benefits cases. Plaintiffs from today forward can simply phrase their complaints to seek only the equitable relief of military record correction, when their true goal is to obtain the monetary relief of back pay and benefits. By phrasing their complaints in this pseudo-equitable form, plaintiffs will avoid what to them may seem the less palatable aspects of the Tucker Act's waiver of sovereign immunity: the relatively short statute of limitations, the nonexistence

---

3. The majority cites the *Report of the Committee on Judicial Review of Administrative Military Personnel Actions of the Department of Defense* 4–10 (Dec. 15, 1996), for the proposition that "the law in this area is marked by complex and sometimes inconsistent procedural rules." However, the report noted that "[s]ome courts have refused to permit bifurcation [of back pay and reinstatement claims]." *Id.* at 5. Moreover, the report also found that "[c]omplex, confusing, and at times inconsistent procedural and substantive rules among the federal district courts and the federal courts of appeals are the antithesis of an equitable and efficient system." *Id.* at 9. The majority's decision today, which carves up James's complaint into certain previously-unannounced claims and then parses each of these apparent claims for jurisdictional purposes, far from helping to achieve the laudable goal of "an equitable and efficient system," will surely only add to any existing complexity, confusion, and inconsistency.

of jury trials, the possible inconvenience of the Court of Federal Claims's location in Washington, D.C., and, most significantly, the experience and expertise of the court's judges in the law of military pay and benefits which may make prevailing harder. Thus, by placing form over substance in contravention of case law, the majority undermines the Court of Federal Claims's unique, historical role in military pay and benefits cases as well as the delicately delineated waiver of sovereign immunity set forth in the Tucker Act.

As to the APA, I find it inconceivable that the Congress intended that act to negate the historic centralization of military pay cases in an expert court and to be the vehicle for diverting such cases to ninety-four inexpert district courts around the nation. This newly-fashioned and improvident loophole will surely lead to much lawyerly wordplay and judicial handwringing as litigants attempt to formulate James-type complaints to avoid entirely Tucker Act jurisdiction. It may also promote splitting one lawsuit into two: the first in the district court to "correct" records and the second in the Court of Federal Claims for back pay, which the district court cannot order. Because the Court of Federal Claims offers an entirely "adequate remedy" for James and similarly situated litigants the APA does not apply and thus I dissent.