**BRAZOS ELECTRIC POWER COOPERATIVE, INC.,**
Plaintiff–Appellant,

v.

**UNITED STATES, Department of Agriculture and Rural Utilities Service, Defendants–Appellees,**

and

**Texas Utilities Electric Company,**
Defendant.

No. 97–1590.

United States Court of Appeals, Federal Circuit.

May 19, 1998.

Robert A. Jablon, Spiegel & McDiarmid, Washington, DC, argued for plaintiff-appellant. With him on the brief was Thomas J. Bryne. Also on the brief were Joseph Robert Riley and Norbert James McDermitt, Riley & McDermitt, Waco, TX.

Lloyd H. Randolph, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for defendants-appellees. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director.

Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

Brazos Electric Power Cooperative, Inc. ("Brazos") appeals the decision of the United States District Court for the Western District of Texas ordering the transfer of its case to the United States Court of Federal Claims. *See Brazos Elec. Power Coop. v. United States,* Civ. No. W–95–CA–318 (W.D.Tex. Aug. 28, 1997). This case was submitted for our decision following oral argument on April 2, 1998. Because the district court properly characterized Brazos's claim as meeting the jurisdictional requirements for exclusive Court of Federal Claims jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1994) and because there is an adequate remedy for Brazos in the Court of Federal Claims under the Tucker Act, we affirm the transfer order.

## BACKGROUND

Brazos is a Texas "generation and transmission cooperative" formed pursuant to the Rural Electrification Act, 7 U.S.C. §§ 901–950aa (1994), and the Texas Electric Cooperative Corporation Act, Tex.Rev.Civ. Stat. Ann. art. 1528b (West 1997), to supply wholesale electric power to its member rural electric cooperatives which then sell retail electricity to their members. In 1979, Brazos bought a 3.8% interest in Comanche Peak, a nuclear power plant, from Texas Utilities Electric Company ("Texas Utilities"). To fund this purchase, Brazos borrowed money from the United States Treasury's Federal Financing Bank (the "FFB"). The Rural Utilities Service (the "RUS"), a federal agency within the Department of Agriculture, as the successor agency to the Rural Electrification Administration, guaranteed this debt (the "Brazos–FFB Debt"). The debt instrument between Brazos and the FFB (the "Brazos–FFB Note") provided that if the "Borrower" (defined in the Brazos–FFB Note as Brazos) elected, with the consent of the RUS, to prepay any or all of the principal, then it would also be subject to a prepayment penalty (the "Prepayment Penalty"). The amount of the Prepayment Penalty was set forth in the Brazos–FFB Note and apparently accorded with the requirements of 7 U.S.C. § 936c.

Texas Utilities's construction of Comanche Peak was substantially delayed and in excess of its original estimated cost. In addition, Texas Utilities was held not to have complied with certain Nuclear Regulatory Commission

licensing requirements. In settlement of a dispute arising out of these matters, Texas Utilities agreed to repurchase Brazos's interest in Comanche Peak. To pay for this repurchase, Texas Utilities issued Brazos a promissory note dated December 22, 1988 (the "Texas Utilities–Brazos Note"). Brazos assigned the Texas Utilities–Brazos Note to the RUS to pay a portion of the Brazos–FFB Debt.

In 1995, Texas Utilities announced its intention to pay the principal balance of approximately $179 million on the Texas Utilities–Brazos Note. The RUS, as assignee, agreed to this prepayment. Brazos objected on the ground that the prepayment would trigger the Prepayment Penalty of approximately $16.5 million on the Brazos–FFB Note. On October 6, 1995, Brazos filed suit in federal district court against the United States, the Department of Agriculture, the RUS, and Texas Utilities seeking declaratory and injunctive relief to prevent Texas Utilities's prepayment of the Texas Utilities–Brazos Note and to prevent the RUS from applying any money it received to the Prepayment Penalty arising from the Brazos–FFB Note. In particular, Brazos argued that the Prepayment Penalty was improperly assessed because it was levied in contravention of certain provisions of the Rural Electrification Act, 7 U.S.C. §§ 936a, 936c, which refer only to "the borrower" as being able to choose to prepay and being subject to prepayment penalties. The court denied Brazos's request for injunctive relief by order dated October 26, 1995.

On October 30, 1995, Texas Utilities prepaid the Texas Utilities–Brazos Note which Brazos had assigned to the RUS. Consequently, the RUS has received, under protest from Brazos, approximately $16.5 million of payments which it has applied to the Prepayment Penalty arising from the Brazos–FFB Debt.

On November 22, 1995, the United States, the Department of Agriculture, and the RUS moved to dismiss Brazos's complaint for lack of subject matter jurisdiction and failure to state a claim. The district court granted the motion on the first ground in its order dated August 28, 1997, transferring the case to the Court of Federal Claims. The district court held that it lacked subject matter jurisdiction over Brazos's claim because, under the Tucker Act, jurisdiction was vested in the Court of Federal Claims. This Tucker Act jurisdiction was founded upon Brazos's claim being one against the United States government, based on a federal statute or government contract, and seeking the return of money exceeding $10,000 paid by Brazos to the United States government. Because the Court of Federal Claims offered Brazos an adequate remedy, the district court held it had no jurisdiction to hear Brazos's claim under the Administrative Procedure Act (the "APA").

On appeal, Brazos contends that the transfer order was improper because its claim was for the equitable relief of a declaration of rights and an injunction against the RUS and not for money damages. Indeed, as Brazos characterizes its claim, all it "is seeking is the correct bookkeeping entry on the Government's books, not the payment of money." Pl.-Appellant's Br., at 13. This court has exclusive jurisdiction to hear this appeal under 28 U.S.C. § 1292(d)(4)(A).

## DISCUSSION

Under 28 U.S.C. § 1631 (1994), a federal court that "finds there is a want of jurisdiction" may transfer an action to a court where the action may properly be brought. In the instant case, Brazos sought jurisdiction in the district court pursuant to the APA. However, the APA imposes two potential obstacles to a claim against the federal government of the type brought by Brazos. First, the sovereign immunity of the federal government is waived only for "[a]n action in a court of the United States seeking relief other than monetary damages." 5 U.S.C. § 702 (1994). Second, non-statutory review of agency action is available only when "there is no other adequate remedy in a court." 5 U.S.C. § 704 (1994). Because, as discussed below, the Court of Federal Claims provides an "adequate remedy" for Brazos's claim, district court jurisdiction under the APA is barred by section 704. Accordingly, we need not address the potential

impediment of the waiver of sovereign immunity under section 702.

The Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. §. 1346 (1994), in this case establish the jurisdiction of the Court of Federal Claims. The Tucker Act sets forth a number of prerequisites for Court of Federal Claims jurisdiction. These include that the action be "a claim against the United States," that the claim is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States," and that the damages claim "not sound[ ] in tort." 28 U.S.C. § 1491(a)(1). The Little Tucker Act also provides for concurrent jurisdiction between the district courts and the Court of Federal Claims when the claim is not for monetary damages in excess of $10,000. *See* 28 U.S.C. § 1346(a)(2). In appealing the transfer to the Court of Federal Claims, Brazos only argues that its claim did not meet one of these Tucker Act jurisdictional elements—that its claim was not a claim for monetary damages exceeding $10,000.

 We do not agree with Brazos's characterization of its claim. The net result of the RUS being ordered not to classify as Prepayment Penalty any of the money it received from Texas Utilities would be either the refunding of the Prepayment Penalty to Brazos or the crediting of this money towards Brazos's other debt. Cancellation of debt owed to the federal government under such circumstances is just as much a form of monetary damages for purposes of the Tucker Act as the direct payment by the federal government of conventional monetary damages. *See Dalton v. Sherwood Van Lines, Inc.,* 50 F.3d 1014, 1017 (Fed.Cir.1995) (noting that a contractor may file suit under the Tucker Act to obtain judicial review of a setoff decision). Thus, the only significant consequence of Brazos obtaining the "equitable relief" that it requests would be that it would obtain monetary damages from the federal government. Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading and, accordingly, we customarily look to the substance of the pleadings rather than their form. *See, e.g.,*

*National Ctr. for Mfg. Sciences v. United States,* 114 F.3d 196, 199 (Fed.Cir.1997) ("Notwithstanding the imprecision of the complaint, we therefore look to the true nature of the action in determining the existence or not of jurisdiction." (internal quotation marks omitted)); *Katz v. Cisneros,* 16 F.3d 1204, 1207 (Fed.Cir.1994) ("Regardless of the characterization of the case ascribed by Hollywood Associates in its complaint, we look to the true nature of the action in determining the existence or not of jurisdiction."); . *Williams v. Secretary of the Navy,* 787 F.2d 552, 557 (Fed.Cir.1986) ("Substance, not form, is controlling.... It is well-settled that a plaintiff ... should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute." (internal quotation marks omitted)); *Maier v. Orr,* 754 F.2d 973, 982 (Fed.Cir.1985) ("We look to the true nature of the action in the district court in determining jurisdiction of an appeal. A civil action for recovery of money from the United States cannot be disguised by couching it in mandamus terms." (citation omitted)). The substance of Brazos's complaint is money damages from the federal government. In essence, Brazos is seeking a refund of money that it claims was wrongfully paid to the federal government. Whether this refund is paid directly to Brazos or whether it is credited towards other money Brazos owes to the federal government is irrelevant to our analysis. Either way, Brazos would be receiving monetary damages from the public fisc of the United States which is the touchstone of Tucker Act jurisdiction.

We also do not agree with Brazos's contention that *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), indicates that this suit, due to the remedy requested, is not one that can be heard in the Court of Federal Claims pursuant to the Tucker Act. In *Bowen,* the decision of the Secretary of Health and Human Services to refuse to reimburse states for funds they expended under the Medicaid program was challenged by the Commonwealth of Massachusetts in federal district court. The Supreme Court held that the availability of a

Tucker Act suit in the Court of Federal Claims in that case was insufficient to "oust a district court of its normal jurisdiction under the APA." *Id.* at 904, 108 S.Ct. 2722. In particular, the Supreme Court explained that it was "not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties." *Id.* at 905, 108 S.Ct. 2722. While the Supreme Court in *Bowen* was concerned that the Court of Federal Claims would not be able to fashion the type of prospective relief that might have been necessary to resolve the suit, there can be no such concern here. Indeed, in the instant case, a single, uncomplicated payment of money would provide Brazos with an entirely adequate remedy. No prospective relief would be required and there would be no ongoing relationship to monitor and referee.

■ Brazos does not contest and we are in accordance that the other elements of Tucker Act jurisdiction are properly established. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (noting that subject matter jurisdiction cannot be conferred on a court by consent, estoppel, or waiver and that appellate courts may raise lack of subject matter jurisdiction *sua sponte* ). As an initial matter, this claim is "founded ... upon ... [an] express ... contract with the United States." 28 U.S.C. § 1491(a)(1). Indeed, this is a contract dispute arising out of the interpretation of the terms of the Brazos–FFB Note relating to the Prepayment Penalty. Of course, if Brazos is adjudged liable for the Prepayment Penalty, then it may have a separate contractual cause of action against Texas Utilities depending on the terms of the Texas Utilities–Brazos Note. While we make no determination as to the merits of Brazos's position, the substance of the dispute is plain. Brazos is making a claim against the federal government for breach of contract. Moreover, that the contract between Brazos and the federal government incorporated certain terms and conditions from the Rural Electrification Act is irrelevant. At issue in this case is the interpretation of contractual terms. This dispute is contractual in nature and does not concern the administration of that statute.

The other elements of Tucker Act jurisdiction are even more plain. This is certainly a "claim against the United States," given that the defendants include the United States, the Department of Agriculture and the RUS. 28 U.S.C. § 1491(a)(1). This is not a case "sounding in tort" because, as discussed above, the dispute is contractual in nature. *Id.* Finally, given that the Prepayment Penalty is over $16 million, there is, of course, no dispute that the amount in controversy exceeds $10,000. *See* 28 U.S.C. § 1346(a)(2).

### CONCLUSION

■ A suit in the Court of Federal Claims pursuant to the Tucker Act provides Brazos with an adequate remedy for its grievance. Therefore, because there is another adequate remedy in a court, section 704 of the APA prohibits Brazos from bringing suit in federal district court pursuant to the APA. Accordingly, the order of the district court transferring the case to the Court of Federal Claims is

*AFFIRMED.*