**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2275

SYSTEMS APPLICATION & TECHNOLOGIES, INC.,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge.  (8:18-cv-02607-PX)

Argued:  October 29, 2021

Decided:  February 14, 2022

Before GREGORY, Chief Judge, and WYNN and THACKER, Circuit Judges.

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

**ARGUED:**  Craig Alan Holman, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellant.  Anne Murphy, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Amanda J. Sherwood, Samuel F. Callahan, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellant.  Brian M. Boynton, Acting Assistant Attorney General, Charles W. Scarborough, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

WYNN, Circuit Judge:

In 2015, employees of a Navy services contractor, Systems Application & Technologies, Inc. ("SA-TECH"), sued the contractor in California state court for violations of the state's labor laws. Before and during that suit, SA-TECH sought guidance from the Navy as to whether California's labor laws applied to it and its subcontractors, given the federal nature of its service contract. When its requests went unanswered, SA-TECH filed a claim with its contracting officer under the Contract Disputes Act. The contracting officer denied the claim.

SA-TECH then filed a complaint in federal district court in Maryland, seeking declaratory and injunctive relief. The district court dismissed the complaint for lack of subject matter jurisdiction pursuant to the Contract Disputes Act's exhaustion requirements. We agree and affirm.

I.

SA-TECH is a Navy contractor headquartered in Maryland. Under a series of contracts beginning in 2008, SA-TECH has assisted the Navy with training and weapons testing. SA-TECH primarily provides these services at Navy bases in California and at sea, where the services are often performed aboard Navy vessels operating off the Pacific coast.

Specifically, SA-TECH's contractual duties include captaining certain Navy vessels, launching and recovering targets used in testing, and role-playing hostile forces in training exercises. The Navy determines what services SA-TECH and its subcontractors perform on a week-by-week basis, and the Navy maintains the right to change the duration

of an at-sea mission at its discretion. These missions or exercises may last only a few hours or may span several weeks, thus requiring SA-TECH personnel to spend more than 24 hours at a time aboard the ships. However, SA-TECH "does not pay [its employees] overtime for time spent aboard a vessel asleep or otherwise not working." Opening Br. at 14. Instead, SA-TECH's employees work a "6 on 6 off" schedule each day, for a total of 12 working hours per day, for which they are paid "9 hours of normal time and 3 hours of overtime." *Id.* at 13–14.

SA-TECH's payments under its Navy contracts are determined by a cost-reimbursement system, through which it receives reimbursement for the costs it incurs under the contracts and earns further revenue by collecting a fee for its services. Under this system, labor costs for certain management and technical personnel are part of a fixed price, but "[a]ll other labor categories are cost-reimbursable." S.J.A. 59.[1] The Navy contractually requires some SA-TECH personnel to hold minimum-security clearances or meet minimum education and experience requirements, but the Navy does not otherwise dictate how SA-TECH hires or compensates its employees. Under its contracts, however, SA-TECH must "perform all work in accordance with the contract and all applicable federal, state and local laws, regulations, codes and directives." S.J.A. 52.

---

[1] Citations to the "J.A." and "S.J.A." refer, respectively, to the Joint Appendix and Sealed Joint Appendix filed by the parties in this appeal.

A.

The present dispute between SA-TECH and the Navy can be traced to a shift in understanding of California labor law. In January 2015, the Supreme Court of California held in *Mendiola v. CPS Security Solutions*, *Inc.* that construction-site security guards who were confined to the premises while on call were entitled to overtime pay—including for time spent asleep. 340 P.3d 355, 358 (Cal. 2015). Because California labor regulations defined hours worked as "the time during which an employee *is subject to the control of an employer*, [including] all the time the employee is suffered or permitted to work, whether or not required to do so," the court ruled that "sleep time" could not be excluded from compensable time during 24-hour shifts. *Id.* at 359, 362, 366 (emphasis added) (citation omitted). The court noted that while federal labor law did not require sleep time to be paid, California was free to offer "greater protection" for employees. *Id.* at 361.

Mindful of the potential impact of *Mendiola* on its employees, SA-TECH quickly contacted the Navy, seeking its guidance on how the ruling might impact employee compensation for SA-TECH's military training services within California. In April 2015, the Navy responded that *Mendiola* does not apply to SA-TECH's contract because (1) state law does not apply to federal enclaves, which the Navy stated would include Navy vessels; and (2) the U.S. Constitution's Supremacy Clause provides that federal law must govern defense functions, including the operation of public vessels. SA-TECH sought additional guidance from the Navy, but none was provided.

In August 2015, employees of SA-TECH and one of its subcontractors sued SA-TECH and the subcontractor in California state court, alleging seven violations of

California labor law. *Richard v. Sys. Application & Techs., Inc.*, No. 56–2015–00471720–CU–OE–VTA (Cal. Super. Ct. filed Aug. 31, 2015). In the *Richard* case, the employees raised claims under *Mendiola*, contending that they were only compensated for twelve hours in any given workday, even though they often were required to "remain on ships or other vessels at least (or in excess of) 24 hours continuously." J.A. 17, 43.

SA-TECH attempted to remove the case to federal court in California and requested that the Navy enter an appearance and assist with the dismissal or defense of the case. But the Navy declined, and the district court remanded the case to state court in December 2015 after finding that the plaintiffs' claims were "solely based on California wage and hour employment law" and that SA-TECH failed to "demonstrate[] that the Federal Government ha[d] any interest in the resolution of th[e] dispute." J.A. 61.

Two months later, with the litigation back in state court, SA-TECH moved to dismiss for lack of jurisdiction. SA-TECH claimed the case was controlled by two federal statutes that permit suits against the United States under certain maritime circumstances, the Public Vessels Act ("Vessels Act"), 46 U.S.C. § 31101, *et seq.*, and the Suits in Admiralty Act ("Admiralty Act"), 46 U.S.C. § 30901, *et seq*.

Meanwhile, in April 2017, the Navy sent a letter to the *Richard* plaintiffs' counsel, advising them that SA-TECH and its subcontractor were not agents of the United States under the relevant contracts. In August 2018, the state trial court refused to grant SA-TECH the dismissal it sought, finding neither the Vessels Act nor the Admiralty Act to be applicable to the facts of the case. *Richard v. Sys. Application & Techs., Inc.*, No. 56-2015-00471720-CU-OE-VTA, 2018 WL 4354148, at *2 (Cal. Super. Ct. Aug. 14, 2018).

5

B.

In June 2017, SA-TECH was still in search of clarity on whether it was an agent of the Government and how the *Mendiola* decision might impact its operations. So, it wrote to the Navy pursuant to the Contract Disputes Act of 1978. That Act provides the procedure by which disputes concerning "any express or implied contract . . . made by an executive agency for . . . the procurement of services" are resolved. 41 U.S.C. § 7102(a). As an initial step, the Contract Disputes Act requires an aggrieved contractor of a federal agency to present a valid claim to the agency's contracting officer in writing for contract interpretation. *See* 41 U.S.C. § 7103(a)(1)–(2); 48 C.F.R. § 52.233-1(d)(1).

In its 2017 letter, SA-TECH purported to seek contract interpretations by requesting, first, that "the Navy confirm that SA-TECH and [its subcontractor] are agents of the Navy for [Vessels and Admiralty Acts] purposes under [its relevant contracts]"; second, that the Navy provide "contractual direction regarding whether SA-TECH and its subcontractors should pay employees wages and overtime for the time they spend asleep at sea," and if so, that the Navy confirm that it would treat those wages "as an allowable cost" under its contracts with SA-TECH; and third, that "the Navy confirm that, if SA-TECH reaches a settlement agreement with the *Richard* plaintiffs to pay the challenged overtime and other related charges, the Navy will reimburse the charges as allowable costs under the [relevant c]ontracts." J.A. 51–52.

Within two months, the Navy's contracting officer denied each of SA-TECH's requests. On the agency question, the officer wrote that, due to ongoing litigation in another, federal case in which the Government's position was that SA-TECH and its

subcontractor were *not* agents of the United States, it would be inappropriate for the officer to "make the requested determination." J.A. 57 (referencing *Daniels v. United States*, No. 316CV02077BTMDHB, 2017 WL 3478765 (S.D. Cal. Aug. 11, 2017)). The contracting officer also denied the other two requests as insufficient and premature, reasoning that they were monetary claims disguised as contract-interpretation requests. In the officer's view, SA-TECH sought to commit the Navy to covering unknown costs yet to be incurred, or measured, by SA-TECH. The officer also stressed that SA-TECH failed to identify any specific contractual terms "which may be subject to varying interpretations" or to submit any statement of costs. J.A. 56.

Not satisfied by the contracting officer's decision, SA-TECH timely filed suit in federal district court in Maryland. SA-TECH sought declaratory judgment on substantially the same three issues it had presented to the Navy: whether SA-TECH acts as the Navy's agent under the contracts, Vessels Act, and Admiralty Act, including for purposes of overtime claims (Count I); whether the modified understanding of California labor laws after *Mendiola* would control SA-TECH's operations on Navy and Navy-chartered ships, and whether SA-TECH would be permitted or required by the Navy, under its contracts, to pay any sleep-time overtime (Count II); and whether costs incurred by SA-TECH in settling the state-court *Richard* litigation would be allowable costs under its current

contract (Count III).[2] *See Sys. Application & Techs., Inc. v. United States*, 491 F. Supp. 3d 73, 79–80 (D. Md. 2020).

The district court granted the Government's motion to dismiss for lack of subject matter jurisdiction. *Id.* at 87. The district court reasoned that SA-TECH had not exhausted its remedies under the Contract Disputes Act as to any of its claims, so the court could not exercise jurisdiction over them. *Id.* As to Count I, the district court concluded that the agency claim was not asserted "as a matter of right," a threshold requirement for *any* claim raised under the Act. *Id.* at 85–86. Regarding Counts II and III, the court found those claims were properly categorized as monetary claims because their true "gravamen . . . plainly concern[ed] money" damages. *Id.* at 84. But as those monetary claims failed to include a "sum certain"—a requirement of the Act—SA-TECH never properly presented them to the Navy's contracting officer, and thus failed to exhaust its remedies.[3] *Id.* at 84–85.

Its claims dismissed, SA-TECH timely appealed.

## II.

We review "the issue of whether a district court possessed jurisdiction in a declaratory judgment proceeding" de novo. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004).

---

[2] SA-TECH also requested injunctive relief to enjoin the Navy from asserting that SA-TECH was not its agent. That request is not at issue in this appeal.

[3] The district court also held that even if it had jurisdiction, it would decline to issue a declaratory judgment as to any of the counts on prudential grounds. *Sys. Application & Techs.*, 491 F. Supp. 3d at 87 n.9. Because we conclude that the district court correctly found it lacked jurisdiction, we do not address whether declaratory relief was proper.

## III.

The Contract Disputes Act provides a narrow waiver of the United States' sovereign immunity. *Cf. Lane v. Pena*, 518 U.S. 187, 192 (1996) ("[A statutory] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."). The Act "applies to any express or implied contract . . . made by an executive agency for . . . the procurement of services," including contracts sounding in maritime law. 41 U.S.C. § 7102(a); *see, e.g.*, *Sw. Marine ex rel. Universal Painting & Sandblasting Corp. v. United States*, 43 F.3d 420, 424 (9th Cir. 1994); *Bethlehem Steel Corp. v. Avondale Shipyards, Inc.*, 951 F.2d 92, 94 (5th Cir. 1992). Moreover, "[w]hen the Contract Disputes Act applies, it provides the *exclusive* mechanism for dispute resolution." *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995) (emphasis added); *see also id.* (explaining that "the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option"); *United States v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir. 1995) ("The review procedures under the [Contract Disputes Act] are exclusive of jurisdiction in any other forum.").

An aggrieved contractor who wishes to pursue relief under the Act must first present a valid, written claim to the agency's contracting officer, who will issue a written decision. 41 U.S.C. § 7103(a)(1)–(3) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer [in writing] for a decision."). If the officer denies the claim, then generally, the contractor may either appeal to the governing agency board or bring an action in the Court of Federal Claims. *See id.*

9

§ 7104; *J & E Salvage Co.*, 55 F.3d at 987. Either way, further appeals may be pursued in the Federal Circuit. *See* 41 U.S.C. § 7107(a)(1); *J & E Salvage Co.*, 55 F.3d at 987.

But for claims arising under maritime contracts like those ostensibly at issue here, the contractor may appeal the contracting officer's decision instead to a federal district court.[4] 41 U.S.C. § 7102(d); *see E. Coast Repair & Fabrication, LLC v. United States ex rel. Dep't of Navy*, 16 F.4th 87, 90 n* (4th Cir. 2021) ("A contractor usually must choose between an agency board and the U.S. Court of Federal Claims. But in maritime cases like this one, a contractor may choose a federal district court."); *Sw. Marine*, 43 F.3d at 423–24 (noting that § 7102(d) "directs jurisdiction for [Contract Disputes Act] appeals [in maritime cases] away from the [Court of Federal Claims] and the Federal Circuit Court of Appeals, in favor of the historic admiralty jurisdiction of the federal district courts").

Before bringing an action in district court, however, the contractor *must* have exhausted its lower-level administrative remedies. The Act states that "[e]ach claim by a contractor against the Federal Government relating to a contract *shall* be submitted to the contracting officer for a decision."[5] 41 U.S.C. § 7103(a)(1) (emphasis added); *see, e.g.*,

---

[4] The Navy notes that "jurisdiction in the district court" in this case "may not be entirely free from doubt," suggesting that this case may not, in fact, involve maritime contracts. Response Br. at 11 n.2. We need not reach that question because there are, as the Navy puts it, "more fundamental jurisdictional problems with SA-TECH's claims." *Id.*

[5] This requirement applies equally to maritime contracts. 41 U.S.C. § 7102(d) (maritime contracts are governed by the Vessels and Admiralty Acts only "to the extent that those [statutes] are not inconsistent with [the Contract Disputes Act]"); *see Bethlehem Steel Corp.*, 951 F.2d at 94 ("[R]ather than completely excluding maritime contracts from the Contract Disputes Act, [§ 7102] simply vests appeals from the administrative determination of claims in the district courts." (quoting *River & Offshore Servs. Co. v.*

*Bethlehem Steel*, 951 F.2d at 94 (finding a lack of jurisdiction over a maritime contract claim where the contractor "did not file a proper administrative claim against the government"); *Sw. Marine, Inc. v. United States*, 926 F. Supp. 142, 144 (N.D. Cal. 1995) ("The language of [the governing statutes has] been carefully drafted to give jurisdiction to the federal district courts *only after* the administrative remedies mandated by the [Contract Disputes Act] have been exhausted." (emphasis added)); *Sys. Application & Techs.*, 491 F. Supp. 3d at 80 ("Where, as here, the Government conditions waiver on a party's exhausting statutorily [prescribed] administrative remedies, then any failure to exhaust bars suit in this Court.").

To exhaust its administrative remedies, an aggrieved contractor must present to the contracting officer a valid claim that relates to the contract. 41 U.S.C. § 7103(a). As the Contract Disputes Act does not define what a "claim" is, *see id.* § 7101, we follow the Federal Circuit's lead in using the definition of "claim" provided by the Federal Acquisition Regulations, *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359 (Fed. Cir. 2018).[6] Under those regulations, a "claim" is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of

---

*United States*, 651 F. Supp. 276, 281 (E.D. La. 1987))); *Sw. Marine*, 43 F.3d at 423 (explaining that the incorporation of the Vessels and Admiralty Acts into the Contract Disputes Act "does not alter the requirement that contract claims be presented to a Contracting Officer in the first instance").

[6] We agree with the district court that, "[s]ince non-maritime [Contract Disputes Act] claims are appealed to either the Federal Circuit or the Court of Federal Claims, their guidance is particularly germane to this dispute." *Sys. Application & Techs.*, 491 F. Supp. 3d at 83 n.7 (citations omitted); *see* 41 U.S.C. §§ 7104, 7107.

money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to th[e] contract."[7] 48 C.F.R. § 52.233-1(c).

The Federal Circuit has indicated that "we should read the definition of 'claim' broadly." *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011). Nevertheless, for all claims, the contractor must be seeking some relief "as a matter of right." 48 C.F.R. § 52.233-1(c). This requires that an aggrieved contractor "*specifically assert* entitlement to the relief sought." *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1265 (Fed. Cir. 1999) (emphasis added). In other words, "the claim must be a demand for something *due or believed to be due* rather than, for example, a cost proposal for work the government later decides it would like performed." *Id.* (emphasis added). A contractor can satisfy the matter-of-right requirement by, for example, "assert[ing] specific contractual and legal grounds for its interpretation of the [contract]." *Id.* That said, a contractor "need not assert a specific contractual provision to meet the 'matter of right' requirement." *BLR Grp. Of Am., Inc. v. United States*, 84 Fed. Cl. 634, 640 (2008).

Additionally, under the definition in 48 C.F.R. § 52.233-1(c), a contractor's failure to include a "sum certain" in a monetary request renders their submission not a "claim"

---

[7] In addition to this definition from the Federal Acquisition Regulations, the Federal Circuit has noted that it may be appropriate to look to whether a particular demand constitutes a claim "based on . . . the language of the contract in dispute[] and the facts of the case." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995). Because the relevant contract in this case does not specify an alternative definition of "claim" and neither party cites "unusual facts" that should alter our analysis under the regulatory definition of "claim," we need not decide more broadly what factors may be relevant to the definition of "claim" for purposes of the Contract Disputes Act. *See id.* at 1575 n.3; *BLR Grp. of Am. v. United States*, 84 Fed. Cl. 634, 639 (2008).

under the Contract Disputes Act and is "fatal to jurisdiction under" that Act. *Securiforce*, 879 F.3d at 1360 (quoting *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013)). "The Court of Federal Claims has, on several occasions, held that the 'sum certain' requirement is met 'when the amount in dispute can be determined by a simple mathematical calculation.'" *GPA-I, LP v. United States*, 46 Fed. Cl. 762, 766 (2000) (quoting *Hamza v. United States*, 31 Fed. Cl. 315, 322 (1994)).

Of course, a *nonmonetary* claim need not state a "sum certain." *See Securiforce*, 879 F.3d at 1360 ("[C]ontractors may in some circumstances properly seek only declaratory relief without stating a sum certain . . . ."); *GPA-I*, 46 Fed. Cl. at 766 (same). Nonmonetary claims can seek "adjustment or interpretation of contract terms, or other relief arising under or relating to th[e] contract." 48 C.F.R. § 52.233-1(c). A nonmonetary claim seeking "'interpretation of a contract term' is a [valid] claim if the contractor 'specifically asserts entitlement to the declaratory relief sought . . . by asserting specific contractual and legal grounds for its interpretation.'" *GPA-I*, 46 Fed. Cl. at 766 (cleaned up) (quoting *Alliant Techsystems*, 178 F.3d at 1265). As for "other relief," the meaning of this third category is expansive. The Federal Circuit has held that "to be a claim 'relating to the contract' under the [Contract Disputes Act], a [contractor's] claim 'must [only] have some relationship to the terms or performance of a government contract.'" *Todd Constr.*, 656 F.3d at 1312 (quoting *Applied Cos. v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998)); *see also id.* at 1313 (holding that the performance evaluations at issue "relate[d]" to the contractor's "performance under the contract," even though they "may not relate to the terms of the contract itself").

With these principles in mind, we now turn to the claims before us.

A.

We first consider Count I, SA-TECH's claim concerning whether it is an agent of the Navy. The parties agree that this claim is nonmonetary. SA-TECH therefore could have satisfied the exhaustion requirement by asserting a claim for (1) "the adjustment or interpretation of contract terms" or (2) "other relief arising under or relating to th[e] contract." 48 C.F.R. § 52.233-1(c). Either way, it needed to show that it was entitled to seek the contract interpretation or other relief "as a matter of right." *Id.* We agree with the district court that SA-TECH failed to meet this standard.

Regarding the first option, although SA-TECH styles its agency-status request as one seeking "contract interpretation," it pinpoints no specific contractual term or provision for this Court to interpret. Opening Br. at 35. While a contractor "need not assert a specific contractual provision to meet the *'matter of right'* requirement," *BLR Grp.*, 84 Fed. Cl. at 640 (emphasis added), it must do so to rely on the "adjustment or interpretation of contract terms" part of the definition of "claim," 48 C.F.R. § 52.233-1(c). But, while SA-TECH may have "invoked provisions of its contract" relating to the use of public vessels and the Navy's ability to control the management of training exercises, Reply Br. at 10, it does so predominately in its factual background sections. And in those sections, as well as within its actual discussion of the agency-status issue, SA-TECH failed to point to a specific

14

contract term whose meaning required adjustment or interpretation. 48 C.F.R. § 52.233-1(c).[8]

Instead, SA-TECH primarily argues that the control exercised by the Navy over SA-TECH and its operation of some Navy ships, as evidenced by the contracts and other facts in the record, proves that SA-TECH is the Navy's agent under the Vessels and Admiralty Acts. It then demands the Navy confirm, or this Court declare, that position to be true. We agree with the district court that SA-TECH's agency-status claim does not truly seek an interpretation or adjustment of any contractual terms, but instead requests "other relief" relating to the contracts. *Sys. Application & Techs.*, 491 F. Supp. 3d at 85–86 (finding that the agency-status claim fell under the portion of the definition of "claim" "seeking, *as a matter of right* . . . other relief . . . relating to th[e] contract" (quoting 48 C.F.R. § 52.233-1(c))).

However, SA-TECH's claim fares no better under the "other relief" prong. Even allowing that the relief sought "relat[es] to th[e] contract[s]," SA-TECH has not shown it is legally entitled to the opinion it seeks "as a matter of right." 48 C.F.R. § 52.233-1(c).

---

[8] The cases SA-TECH cites for its statement that its agency-status claim "is the sort of interpretive question routinely raised and resolved under the [Contract Disputes Act]" do not deal with similar amorphous claims or agency interpretations. Opening Br. at 34, 42–43; *see DaVita, Inc. v. United States*, 110 Fed. Cl. 71, 85–87 (2013) (interpreting payment terms under the contract); *CW Gov't Travel, Inc. v. United States*, 63 Fed. Cl. 369, 371, 389 (2004) (seeking an interpretation of specified exclusivity provisions); *Tiger Nat. Gas, Inc. v. United States*, 61 Fed. Cl. 287, 293 (2004) (contesting an offset claim decision based on a savings guarantee provision in the contract); *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58578, 13 BCA ¶ 35,411 (seeking an interpretation of a "Tour of Duty/Hours of Work" clause of its contract).

SA-TECH asserts that courts and Congress have recognized that "agency status under the [Vessels Act and Admiralty Act] is critically important for contractors." Opening Br. at 36. Since agency status impacts the scope of a contractor's liability, SA-TECH's argument goes, an agency determination is critical to its performance. *See Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 207 (4th Cir. 1995) ("Where the [Vessels or Admiralty Acts] provide[] a remedy against the United States, there is no recourse against the government agent whose actions engendered the lawsuit."). Because the question of agency relates to its performance, and was asserted pursuant to the Contract Disputes Act, SA-TECH contends it has satisfied all requirements. We disagree.

Illustrative here is the Court of Federal Claims' decision in *BLR Group of America v. United States*. In *BLR Group*, a contractor whose contract was terminated for convenience by the Air Force submitted two claims under the Contract Disputes Act, requesting that the Air Force (1) correct the ratings and reviews within its contract performance assessment report and (2) delete certain comments from the initial report from the past-performance information-retrieval system.[9] 84 Fed. Cl. at 635–39. The court explained that as the contractor was "not seeking money damages or the adjustment of

_____

[9] The Court of Federal Claims later granted a motion for reconsideration as to the first claim, in which it reasserted that the contractor satisfied the "'matter of right' requirement by asserting entitlement to relief with some legal basis; namely, entitlement to a fair and accurate performance evaluation pursuant to [Federal Acquisition Regulations] § 42.1502(a)." *BLR Grp. of Am., Inc. v. United States*, 94 Fed. Cl. 354, 365 (2010), *dismissed*, 460 F. App'x 918 (Fed. Cir. 2011); *see also id.* at 372 (explaining again that "[i]n this case . . . the Air Force was required to prepare and disseminate a fair and accurate evaluation of [the contractor]'s contract performance—a requirement equivalent to a mandatory contract term").

contract terms, [its] claim must be a written demand seeking, as a matter of right, [other] relief arising under or relating to the contract." *Id.* at 639.

Focusing on the "as a matter of right" requirement, the court analyzed each claim separately. For the assessment-report claim, the court explained that while the contractor did not need to assert a specific contractual provision to satisfy the "as a matter of right" requirement, he was required to "assert entitlement that ha[d] some legal basis." *Id.* at 640. Thus, "[a]s a threshold matter," the court needed to decide "whether [the] plaintiff was legally entitled to a[n assessment report]." *Id.* The contractor pointed to specific Federal Acquisition Regulations provisions and Air Force regulations which stated, in part, that "[A]gencies *shall* prepare an evaluation of contractor performance for each contract" which met certain requirements. *Id.* (emphasis added) (quoting 48 C.F.R. § 42.1502(a) (2006)). Because the contract met those requirements, the court found that the contractor was legally entitled to a performance evaluation and, as a "logical corollary," to a correct one. *Id.* at 640–42.

By contrast, the court found the contractor could not assert a claim "as a matter of right" for deletion of certain content from the information-retrieval system. *Id.* at 642–43. The regulations and guidelines cited by the contractor did not address, beyond "general statements," "what must occur after a[n assessment report] has been posted to the [retrieval system] for dissemination." *Id.* at 643. Because the cited authorities did "not address the manner in which a [retrieval system] entry is displayed or formatted," the court concluded that "there [wa]s no legal basis for [the contractor] to assert a [Contract Disputes Act] claim regarding the display or format of its [retrieval system] entry." *Id.*

17

SA-TECH's claims resemble the *BLR Group* contractor's second asserted claim more than the first. SA-TECH has not pointed to any legal authority or provision requiring the Navy to provide a blanket declaration that SA-TECH is or is not its agent under the contracts. The Vessels and Admiralty Acts, upon which SA-TECH relies, provide a potential legal basis for asserting that the proper defendant in *Richard* is the Government, because they waive the Government's immunity in certain actions concerning Government vessels or those of parties acting on the Government's behalf. *See* 46 U.S.C. §§ 30903, 31102; *Manuel v. United States*, 50 F.3d 1253, 1260 (4th Cir. 1995) (holding that the exclusivity provision of the Admiralty Act required a seaman who worked on a ship owned by the United States to bring his action against the Government instead of the ship's private operating agent); *Favorite v. Marine Pers. & Provisioning, Inc.*, 955 F.2d 382, 385–86 (5th Cir. 1992) (finding a privately owned vessel operated for the benefit of the Government to constitute a public vessel under the Vessels and Admiralty Acts because the Government exercised "possession, command, and control" over the vessel).

But, critically, the Vessels and Admiralty Acts do not establish a legal basis for SA-TECH to assert that *the Navy* must advise SA-TECH as to whether or not it believes SA-TECH to be its carte blanche agent under these statutes.[10] That is, though those statutes

---

[10] As the Government notes in its Response Brief, both acts primarily function only to waive sovereign immunity. *Cf. Manuel*, 50 F.3d at 1255 n.1 ("Neither the [Admiralty Act] nor the [Vessels Act] create causes of action against the United States. Instead, they act only as a waiver of the sovereign immunity of the United States in admiralty cases. The acts merely provide the jurisdictional hook upon which to hang a traditional admiralty claim.").

may bear on SA-TECH's potential liability in cases brought by third parties, they have nothing to offer on the question of whether SA-TECH is an agent per se. Consequently, we fail to see how the Vessels and Admiralty Acts entitle SA-TECH to force the Government to name it as an agent because that agency status is "something due" to SA-TECH under its contracts or the acts themselves. *Alliant Techsystems*, 178 F.3d at 1265; *see BLR Grp.*, 84 Fed. Cl. at 640–43 (looking to specific regulations to find legal entitlement to an asserted claim).

SA-TECH disagrees, arguing that the Contract Disputes Act requires only that the claim *relate to* the contract and does not require a separate form of entitlement to relief other than that provided in the Act itself.[11] However, the cases it relies on belie its position.

First, SA-TECH cites *Todd Construction, L.P. v. United States* for its argument that there is no separate "matter of right" requirement and that claims only need to be related to the contract. But *Todd Construction* explicitly noted that the Government did not dispute that the contractor satisfied the "matter of right" requirement in that case. 656 F.3d at 1311. In fact, the requested relief—a judgment stating the contractor's performance review was inaccurate—arose directly from a regulation.[12] *Id*. at 1308–09 (noting that, at the time, the

---

[11] Throughout its Opening Brief, SA-TECH stresses that the Contract Disputes Act simply states that claims "relating to the contract" must be presented. *See* Opening Br. at 42; 41 U.S.C. § 1703. Certainly, the claim must be related to the contract. But we still must determine whether it is a valid "claim" at all, as defined by 48 C.F.R. § 52.233-1(c).

[12] Indeed, the lower court had found the "matter of right" requirement to be met since "[f]ederal regulations require[d]" the provision of a fair and accurate performance report and the plaintiff asserted a claim seeking a fair report "prepared in accordance with

Federal Acquisition Regulations required provision of a performance report and review of said report to ensure it was accurate (citing 48 C.F.R. § 36.201 (2006))); *see also id.* at 1314 n.6 (noting that "the regulation applies of its own force and directly governs the parties' performance under the contracts"). Thus, the Federal Circuit implicitly acknowledged the importance of the existence of a regulation or other legal basis providing a right to the "other relief" sought. *See id.*; *BLR Grp.*, 84 Fed. Cl. at 643 ("So long as [the contractor] grounds its entitlement on *some legal basis*, [it] has met the 'matter of right' requirement for filing a [Contract Disputes Act] claim." (emphasis added)).

Second, relying on *Alliant Techsystems*, SA-TECH argues that by asking whether it asserted a legal entitlement to its claim, we would be placing the cart before the horse by reaching the merits before deciding jurisdiction. This is not so under the facts before us, and the approach described above.

In *Alliant Techsystems*, the contractor sought a declaration that it was not bound to perform under specified option provisions of its contract because the Government untimely exercised the option and used a delivery rate not included in the option clause. 178 F.3d at 1264. The Federal Circuit held that a contractor asserted a contract interpretation claim as a matter of right where it "asserted specific contractual and legal grounds for its interpretation of the option" clause at issue. *Id.* at 1265. In doing so, the court rejected the Government's argument that the interpretation was not sought as a "matter of right"

the regulations." *Todd Constr. L.P. v. United States*, 85 Fed. Cl. 34, 43 (2008) (citing 48 C.F.R. § 36.201 (2006)).

because, in the Government's view, another provision of the contract required the contractor to perform first, and only seek an interpretation of the clause *after* performance was completed. *See id.* The court noted that the Government's interpretation would require the court to determine the merits of the claim—whether the contractor had to perform the option—before reaching jurisdiction and thus "reverse[d] the proper sequence." *Id.*

By contrast, here, neither the district court nor this Court has offered any opinion as to whether SA-TECH may qualify as an agent of the Navy pursuant to its current contracts under the Admiralty or Vessels Acts. Indeed, we do not reach the merits of this claim at all. Nor need we do so to determine that SA-TECH failed to assert specific contractual or legal grounds entitling it to force the Navy to issue a blanket declaration as to whether or not SA-TECH is its agent.

Third, *Alliant Techsystems* directly forecloses SA-TECH's argument that it is automatically asserting a claim "as a matter of right" by way of asserting it under the Contract Disputes Act. If that were so, the Federal Circuit in *Alliant Techsystems* would have had no occasion to delve into the question of whether the claim in that case was asserted "as a matter of right," because it, too, was raised pursuant to the Contract Disputes Act. In fact, such an understanding would render the entirety of the definition of "claim" in 48 C.F.R. § 52.233-1(c) superfluous for Contract Disputes Act purposes; all claims under the Act could simply be asserted as claims for other relief relating in some way to the contract. SA-TECH cites no authority to support such a broad understanding of the meaning of "claim."

21

Ultimately, because SA-TECH does not specifically assert any legal or contractual grounds entitling it to the Navy's opinion on its agency status under the Admiralty or Vessels Acts, its claim is invalid under the Contract Disputes Act. *BLR Grp.*, 84 Fed. Cl. at 643 (finding there to be no Contract Disputes Act claim where the plaintiff failed to show any legal grounds entitling it to the relief sought). SA-TECH's failure to present a valid claim means that it did not exhaust all administrative remedies, so the federal courts do not have subject matter jurisdiction. We affirm the district court's ruling as to Count I.

B.

That brings us to Counts II and III which are SA-TECH's claims concerning wage and overtime payments under California law, as understood in *Mendiola*. Although the district court acknowledged that "the distinction between monetary and non-monetary claims is not always straightforward," it ultimately concluded that Counts II and III primarily sought monetary payment. *Sys. Application & Techs.*, 491 F. Supp. 3d at 83–85. We agree.

As noted above, a contractor's failure to include a "sum certain" in a monetary request is "fatal to jurisdiction under" the Contract Disputes Act. *Securiforce*, 879 F.3d at 1360 (citation omitted). And a contractor "may not circumvent the general rule requiring a sum certain by reframing monetary claims as nonmonetary." *Id.* Courts thus must take a close look at "whether a given claim is properly classified as monetary or nonmonetary." *Id.* The Federal Circuit advises courts to "look to the substance of the pleadings[,] rather than their form" to make this determination. *Id.* (quoting *Brazos Elec. Power Co-op. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998)). "If 'the only significant consequence'

22

of the declaratory relief sought 'would be that [the plaintiff] would obtain monetary damages from the federal government,' the claim is in essence a monetary one." *Id.* (quoting *Brazos Elec. Power Co-op.*, 144 F.3d at 787); *see also Weststar Eng'g, Inc.*, ASBCA No. 52484, 02-1 BCA ¶ 31,759 (Armed Services Board of Contract Appeals noting that, "[w]here the gravamen of a claim is money, the contractor cannot avoid the requirement for a sum certain . . . by casting it as a claim for contract interpretation").

However, that the requested relief "has obvious monetary ramifications" does not necessarily morph a claim into a monetary one if the gravamen of the request itself is *not* money. *TRW, Inc.*, ASBCA No. 51172, 99-2 BCA ¶ 30,407. A few examples will help establish the parameters for our analysis of SA-TECH's claims.

In *Securiforce International America, LLC v. United States*, a contractor sought declaratory relief that its fuel delivery contract was improperly terminated. 879 F.3d at 1358. The Federal Circuit held that it lacked jurisdiction because the claim was a monetary one in need of a sum certain. *Id.* at 1360–61. Although the claim was styled as a nonmonetary request for declaratory relief, the Federal Circuit found that relief, if granted, would "yield only one significant consequence: it would entitle Securiforce to recover money damages from the government." *Id.* at 1360. Because the claim was for money damages but involved no timely presentation of a "sum certain" to the contracting officer, the Federal Circuit found the initial claim to have been improperly presented under the Contract Disputes Act. *Id.* at 1360–62.

Similarly, in *Kellogg Brown & Root Services, Inc. v. United States*, the Court of Federal Claims found a service provider's request for indemnification, presented as a

question of contract interpretation, to be a monetary claim. 115 Fed. Cl. 168, 174–79 (2014). While performing services under Government contract, Kellogg personnel were exposed to hazardous chemicals. *Id.* at 170. The personnel sued Kellogg. *Id.* In turn, Kellogg sent numerous letters to the Army Corps contracting officer, seeking the Government's participation in the lawsuit as well as indemnification, which Kellogg asserted it was due under a specific contract clause. *Id.* at 174–79. The court explained that Kellogg "ha[d] experienced and will experience significant costs in the third-party [law]suits, both in defense and settlement" and was "no matter how indirectly" "invoking its right to compensation from the government." *Id.* at 176. In coming to this conclusion, the court reasoned that Kellogg had focused on the "catastrophic financial exposure" resulting from the third-party claim. *Id.* at 175. The court lacked jurisdiction "over what [Kellogg] style[d] as a nonmonetary claim" because Kellogg's "'nonmonetary' claim [was] essentially an invalid [Contract Disputes Act] claim for money damages." *Id.* at 184. As in *Securiforce*, the *Kellogg* court held that the claim was invalid because it was a monetary one that did not state a sum certain. *Id.* at 181–85.

By contrast, in *CW Government Travel, Inc. v. United States*, the Court of Federal Claims held that the contractor had presented a valid, nonmonetary claim when he requested that the contracting officer "confirm that the travel requirements for all [work] sites . . . [would] continue to be performed by [the contractor] throughout the total contract period, including all options exercised by the Government." 63 Fed. Cl. 369, 382 (2004) (citation omitted). The court disagreed with the Government's assertion that this claim only sought a "guarantee of how the Government would act if, in the future," a requested transfer

24

occurred. *Id.* (emphasis omitted). Rather, the court concluded that there was a valid claim since, "[b]y submitting its interpretation of the exclusivity provisions . . . and by asking the Contracting Officer to 'confirm' or refute its interpretation, [the contractor] sought *a contracting officer's interpretation of contract terms*, rather than *a guarantee that the government would behave a certain way* under the contract." *Id.* at 383 (emphases added).

Courts have sometimes applied these principles in a way that seems to blur the line between monetary and nonmonetary claims, but even in those cases, the declaration sought was for relief under a specific pay schedule or on a cost-accounting basis. For example, in *DaVita, Inc. v. United States*, the Court of Federal Claims found that the requested declaratory judgment—that "DaVita is entitled to payment at the rates included in . . . DaVita's [Veterans Affairs] Contract' for 'dialysis services provided pursuant to authorizations issued by Contract"—was not a disguised money claim. 110 Fed. Cl. 71, 86 (2013) (cleaned up). In the court's view, the "gravamen" of this claim was "not a request for a sum certain" but "quintessentially a claim for the interpretation of the contract's payment terms." *Id.* Similarly, in *TRW*, the Armed Service Board of Contract Appeals held that a contractor's declaratory request—seeking contract interpretation on "the allowability and/or allocability of certain costs that TRW included in its final rate submissions for the 1990, 1991, and 1992 cost accounting periods"—was not a request for money damages. 99-2 BCA ¶ 30,407. The Board granted declaratory relief, noting that any "monetary ramifications" of TRW's claim did not supersede the contract interpretation TRW sought concerning its final rate submissions. *Id.*

SA-TECH maintains that its request—declaratory relief as to whether *Mendiola* applies, and, if so, whether the Government will allow settlement, sleep-time, or other costs—is a valid, future-looking nonmonetary claim like that in *CW Government Travel*. SA-TECH argues that these questions implicate significant consequences, unrelated to money damages, such as an interpretation of governing law. It further contends that the approach adopted by the district court, which looked to whether the "gravamen" of the claim was money, would turn all contract claims into monetary damages claims, since money is inherently at issue in all contracts. Opening Br. at 45.

We disagree. SA-TECH seeks indemnification by another name. Like the service provider in *Kellogg*, both its initial claim and its complaint sought a guaranteed reimbursement for unspecified costs, some of which have yet to be incurred (or may never be). Regarding Count II, when seeking the Government's position on whether *Mendiola* applied to the contracts, SA-TECH stressed that if the Government fails to comply with certain "implied contract obligations, the law recognizes a constructive change, entitling the contractor to an equitable adjustment." J.A. 51. It is unclear what, other than money, that adjustment may be. And in its complaint, SA-TECH insisted that "the Navy must provide clear contractual direction regarding whether California wage and hour law applies aboard Navy controlled ships and federal enclaves *and support (financially and legally) its interpretation*." J.A. 12 (emphasis added).

In its briefing, SA-TECH warns of dire consequences, arguing that incurring the additional costs required by *Mendiola* would "nearly triple the wages for its personnel's time spent at sea," creating a "multi-million dollar liability" that the Navy will only

consider reimbursing after the fact. Opening Br. at 6. We take SA-TECH at its word—this is a monetary claim. *See Kellogg*, 115 Fed. Cl. at 175 (remarking on the difficulty of "avoid[ing] the monetary aspect" of a contractor's request for indemnification against "catastrophic financial exposure"). And, as the district court aptly put it, "even well-reasoned policy arguments cannot relax jurisdictional requirements." *Sys. Application & Techs.*, 491 F. Supp. 3d at 85.

As for Count III, SA-TECH's initial submission to the contracting officer demanded that the Navy "immediately affirm that it will *reimburse* SA-TECH under the Contracts for costs incurred [in] settling the litigation." J.A. 49 (emphasis added). In its complaint, SA-TECH asked for a declaratory contract interpretation as to whether "if SA-TECH reaches a settlement agreement . . . the Navy will *reimburse the charges* as an allowable cost under the Contracts." J.A. 12 (emphasis added). And throughout its claim, complaint, and briefing, SA-TECH emphasized that without knowing whether the Government will cover such settlement costs, it will "suffer[] severe financial harm." J.A. 47; *see* J.A. 34 ("If SA-TECH settles the employment lawsuit and the Navy subsequently does not allow the settlement costs, SA-TECH will have suffered severe financial harm."); Opening Br. at 4 (stating liability "could total many millions of dollars"), 6 (noting SA-TECH could incur a "multi-million dollar liability," creating "severe financial risk for SA-TECH"), 19–20. Clearly, the gravamen of SA-TECH's claims in Counts II and III is a monetary one.

And, unlike the contractors in *DaVita* and *TRW*, SA-TECH is not asking for payment for services rendered under some contractual pay rate, nor does it seek approval of costs and accounting measures in specific rate submissions. Instead, it seeks a guarantee

27

for sums unknown and speculative. *Nowhere* in the record does SA-TECH provide even an estimated number for the costs it might incur other than to say such liability would be in the "millions of dollars."[13] J.A. 11. SA-TECH may resubmit a claim at a later date, if and when the sums become more determined and knowable.[14] But it cannot do so based on speculation now.

To be sure, the initial claim and complaint also request a decision regarding whether *Mendiola* or federal law govern wage-time provisions under the contract. However, it is not clear what specific contract clause or rate schedule, if any, SA-TECH requests interpretation of. SA-TECH points to the Federal Acquisition Regulations provision that "contracting officers and contractors should seek advance agreement on the treatment of special or unusual costs," 48 C.F.R. § 31.109(a), as evidence that this is not a monetary claim but instead an act of regulatory compliance. But what SA-TECH seeks here is an unqualified commitment from the Navy that the Government will pay for any incurred settlement and labor costs, no matter what they may be. That is a claim for money, not an attempt to negotiate an "advance agreement." What's more, the *only* consequences of the issuance of a declaration regarding *Mendiola* that SA-TECH has ever mentioned in this litigation relate to money.

---

[13] In fact, SA-TECH acknowledges that it does not know the "formal claim amount" from the *Richard* plaintiffs and does "not know" what the plaintiffs will claim. Opening Br. at 4–5.

[14] SA-TECH has represented to this Court that it filed a new monetary claim in January 2021.

In sum, what SA-TECH wants this Court to do, either explicitly or in effect, is to declare whether California or federal labor law applies to *all* "future missions under the 2013 Contract," irrespective of any applicable contract provisions or particular SA-TECH subcontractors. J.A. 12 In turn, SA-TECH wishes for the Navy to "support (financially and legally) its interpretation" by guaranteeing any necessary payments of unknown settlement and labor costs. *Id.* But we agree with the district court that Counts II and III are monetary claims for which SA-TECH did not present a requested sum certain, as required to exhaust its remedies. Accordingly, we conclude that the district court correctly dismissed SA-TECH's claims under Counts II and III for lack of subject matter jurisdiction.

IV.

For the reasons stated above, we hold that SA-TECH failed to present valid claims under the Contract Disputes Act and thus did not exhaust its administrative remedies. Accordingly, we affirm the district court's dismissal of SA-TECH's claims for lack of subject matter jurisdiction.

*AFFIRMED*